[712 NYS2d 687]

Saratoga County Chamber of Commerce, Inc., et al., Appellants, v George Pataki, as Governor of the State of New York, et al., Respondents, et al., Defendant. (Action No. 1.)

Keith L. Wright, as Member of the New York State Assembly, et al., Appellants, v George E. Pataki, as Governor of the State of New York, et al., Respondents, et al., Defendant. (Action No. 2.)

Third Department, August 24, 2000

148

**APPEARANCES OF COUNSEL**

*O'Connell & Aronowitz,* Albany (*Cornelius D. Murray* of counsel), for Saratoga County Chamber of Commerce, Inc. and others, appellants.

*Jay Goldberg,* New York City, for Keith L. Wright and another, appellants.

*Eliot Spitzer, Attorney General,* Albany (*Andrew D. Bing* of counsel), for respondents.

**OPINION OF THE COURT**

MERCURE, J.

## I.

The Indian Gaming Regulatory Act (25 USC § 2701 *et seq.* [hereinafter IGRA]) was enacted in 1988 for the declared purpose of "provid[ing] a statutory basis for the operation of gaming by Indian tribes as a means of promoting tribal economic development, self-sufficiency, and strong tribal governments" (25 USC § 2702 [1]), while at the same time "provid[ing] a statutory basis for the regulation of gaming by an Indian tribe adequate to shield it from organized crime and other corrupting influences, to ensure that the Indian tribe is the primary beneficiary of the gaming operation, and to assure that gaming is conducted fairly and honestly by both the operator

and players" (25 USC § 2702 [2]). Under IGRA, gaming is divided into three categories. Class III gaming, which is at issue here, is statutorily defined as "all forms of gaming that are not class I gaming or class II gaming" (25 USC § 2703 [8]) and includes pari-mutuel horse race wagering, lotteries, banking card games such as baccarat, chemin de fer and blackjack, and electronic or electromechanical facsimiles of any game of chance or slot machines of any kind (25 USC § 2703 [7] [B]; see, Hotel Empls. & Rest. Empls. Intl. Union v Davis, 21 Cal 4th 585, 596, 981 P2d 990, 999).

Class III gaming activities are permitted on Indian lands only if "located in a State that permits such gaming for any purpose by any person, organization, or entity, and * * * conducted in conformance with a Tribal-State compact entered into by the Indian tribe and the State" (25 USC § 2710 [d] [1] [B], [C]; see, Rumsey Indian Rancheria of Wintun Indians v Wilson, 64 F3d 1250, 1256, cert denied sub nom. Sycuan Band of Mission Indians v Wilson, 521 US 1118). The term "Indian lands" encompasses not only lands within the limits of an Indian reservation but also those held in trust by the United States for the benefit of an Indian tribe (25 USC § 2703 [4] [A], [B]), including lands acquired in trust by the Secretary of the Interior after October 17, 1988 upon a determination "that a gaming establishment on newly acquired lands would be in the best interest of the Indian tribe and its members, and would not be detrimental to the surrounding community, but only if the Governor of the State in which the gaming activity is to be conducted concurs in the Secretary's determination" (25 USC § 2719 [b] [1] [A]).

In 1993, then-Governor Mario Cuomo entered into a Tribal-State compact with the St. Regis Mohawk Tribe (hereinafter the Tribe) which allowed the Tribe to operate gambling casinos. The Tribe opened the Akwesasne Mohawk Casino on its reservation near Hogansburg in Franklin County on April 10, 1999. On May 27, 1999, defendant Governor George Pataki and the Tribe entered into an amendment to the compact to permit the operation of electronic gaming devices, and the Tribe began the operation of these devices the following day. In addition, on October 29, 1999, the Tribe sought review by the Department of the Interior of the Tribe's application to acquire the property of the former Monticello Raceway in the Village of Monticello, Sullivan County, for the purpose of establishing a class III gaming establishment there. Following such review, the Secretary of the Interior determined that a gaming

establishment on the parcel would be in the best interest of the Tribe and its members and would not be detrimental to the surrounding community. The application now awaits action of the Governor pursuant to 25 USC § 2719 (b) (1) (A).

On September 23, 1999, plaintiffs in action No. 1 (hereinafter the Saratoga plaintiffs) commenced an action in Supreme Court, Albany County, against the Governor, the State Racing and Wagering Board, and defendant Judith Hard, a former Counsel to the Governor who signed the May 27, 1999 amendment on behalf of the State. The amended complaint alleges that the Governor lacked authority to execute the compact or the amendment and that the types of gambling contemplated by both of them are prohibited by the New York Constitution, criminal statutes and public policy as enunciated by the Legislature. Plaintiffs therefore seek to nullify the compact and the amendment and to enjoin defendants from further implementing either document, including the expansion of the gambling activity onto other sites. The next day, plaintiffs in action No. 2 (hereinafter the Wright plaintiffs) commenced an action in Supreme Court, New York County, against the Governor and the State seeking similar declaratory and injunctive relief. Defendant Village of Monticello moved in action No. 1 to intervene as a defendant and to consolidate the two actions. On November 18, 1999, Supreme Court granted Monticello's motion to intervene and consolidated the actions, with venue in Albany County.

Defendants[1] moved to dismiss both actions upon the grounds that plaintiffs failed to join an indispensable party, i.e., the Tribe, plaintiffs or certain of them lacked standing or legal capacity to sue, the complaints state a claim for relief which is subject to complete Federal preemption, the complaints are barred by the four-month Statute of Limitations of CPLR 217 and by the doctrine of laches, and certain of plaintiffs' claims are not ripe for judicial review. Monticello asserted a counterclaim against the Wright plaintiffs seeking a declaration that the compact and amendment are valid and enforceable. The Wright plaintiffs moved to dismiss the counterclaim. Monticello cross-moved for summary judgment on its counterclaim. Supreme Court granted defendants' motion to dismiss based upon the failure to join the Tribe, which it concluded was an indispensable party. It did not address any of the other grounds

---

1. "Defendants" shall refer to all defendants in both actions, except Monticello.

asserted for dismissal or Monticello's cross motion for judgment on its counterclaim. Plaintiffs in both actions appeal.

## II.

■ We are faced with the question of whether the Tribe's sovereign immunity from suit can be invoked by a non-Indian party to foreclose judicial review of the authority of the Governor, acting without legislative approval, to enter into a compact with the Tribe. We conclude that Supreme Court abused its discretion in dismissing the actions based on plaintiffs' inability to join the Tribe as a defendant. The general rule is that "[p]ersons who ought to be parties if complete relief is to be accorded between the persons who are parties to the action or who might be inequitably affected by a judgment in the action shall be made plaintiffs or defendants" (CPLR 1001 [a]). A different rule applies, however, in cases such as this one[2] where jurisdiction cannot be obtained over the non-joined party without the consent of that party. In such a case, the court may allow the action to proceed in the absence of a necessary party if justice so requires, based on a consideration of (1) whether the plaintiffs have another effective remedy if the action is dismissed for nonjoinder, (2) prejudice to the defendants or the person not joined, (3) whether and by whom prejudice might have been avoided, (4) feasibility of protective orders by the court, and (5) whether an effective judgment may be rendered in the absence of the person not joined (see, CPLR 1001 [b]). In our view, a balanced consideration of these factors militates against the invocation of the harsh and rarely used remedy of dismissing the complaint for nonjoinder of an indispensable party (see, Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C3211:34, at 47-48).

First, there is no question that plaintiffs have no other effective remedy if the action is dismissed for nonjoinder. As already noted, the Tribe is immune from suit in both State and Federal courts. In addition, the State is immune from suit in Federal court pursuant to the 11th Amendment of the US Constitution (see, *Seminole Tribe v Florida*, 517 US 44; *Ahern v State of New York*, 244 AD2d 7, 9). Therefore, dismissal of the

---

2. It is undisputed that plaintiffs cannot obtain jurisdiction over the Tribe because, as a sovereign Indian nation, it is entitled to immunity from suit in State court (see, *Matter of Ransom v St. Regis Mohawk Educ. & Community Fund*, 86 NY2d 553, 558) as well as in Federal court (see, *Oklahoma Tax Commn. v Citizen Band Potawatomi Indian Tribe*, 498 US 505, 509; *Niagara Mohawk Power Corp. v Tonawanda Band of Seneca Indians*, 862 F Supp 995, 1004, *affd* 94 F3d 747).

action based upon plaintiffs' inability to obtain jurisdiction over the Tribe would have the effect of absolutely barring resolution of the important and far-reaching issues raised in the complaints.

It is noteworthy, we believe, that a number of other jurisdictions have considered the question of whether a governor has the authority to bind a State to an Indian gaming compact, and in every State whose constitution does not grant residual powers to the executive, the litigation resulted in a declaration that the compact is void and unenforceable absent legislative concurrence (see, *Jicarilla Apache Tribe v Kelly*, 129 F3d 535, 537; *Kickapoo Tribe of Indians v Babbitt*, 827 F Supp 37, 46, revd on other grounds 43 F3d 1491; *McCartney v Attorney General*, 231 Mich App 722, 727-728, 587 NW2d 824, 827, lv denied 460 Mich 873, 601 NW2d 101; *Narragansett Indian Tribe v State*, 667 A2d 280, 282 [RI]; *State ex rel. Clark v Johnson*, 120 NM 562, 574, 904 P2d 11, 23; *State ex rel. Stephan v Finney*, 251 Kan 559, 582-583, 836 P2d 1169, 1185). Further, the Court of Appeals has stated that the fundamental and critical policy decisions of this State are the exclusive prerogative of the Legislature (see, e.g., *Bourquin v Cuomo*, 85 NY2d 781, 784; *Matter of New York State Health Facilities Assn. v Axelrod*, 77 NY2d 340, 349).

We are also mindful of defendants' arguments that (1) several bills have been introduced in the State Legislature that would have explicitly prevented the Governor from entering into gaming compacts negotiated pursuant to IGRA and that none have become law, and (2) chapter 264 of the Laws of 1993—authorizing the State Police access to criminal history records of persons applying to engage in activities authorized by IGRA—demonstrates that the Legislature has adopted the compact entered into by the Governor. Given the various arguments and in view of the considerable uncertainty concerning the Governor's authority to bind the State to tribal gaming compacts and the types of gaming that may be legally authorized in New York, the public interest would be best served by a determination of this litigation on the merits.

Nor are we persuaded that great prejudice would result from nonjoinder or that an effective judgment cannot be rendered in the Tribe's absence. Defendants' predictions of dire and irreparable economic injury to the Tribe in the event that judgment is granted in favor of plaintiffs fails to take account of the relief that is actually sought by plaintiffs or the fact that invalidation of the compact and the amendment would result

not from the nonjoinder of the Tribe but from the Governor's lack of authority to bind the State—a possibility that was well known and considered at the time the Tribe entered into its agreements with the Governor. The complaint in action No. 1 merely seeks a declaration that the compact and the amendment are illegal and a nullity and permanently enjoining defendants from taking any *further* actions to implement them, i.e., operation of electronic gaming devices pursuant to the amendment or expansion of the casino operations to the Monticello Raceway property. The complaint in action No. 2 seeks the same relief and, in addition, an injunction against the expenditure of further funds or other effectuation of the amendment or defendants "entering into" or amending any Tribal gaming compacts or the expenditure of funds in connection therewith without the prior full participation of the Legislature. Except for the electronic lottery terminals, which were authorized by the amendment only months prior to the commencement of these actions, the complaints do not seek to interfere with any of the Tribe's existing gaming facilities or activities. Unlike the cases cited by defendants as support for their contention that the Tribe is an indispensable party (*see, e.g., Manybeads v United States*, 209 F3d 1164; *Fluent v Salamanca Indian Lease Auth.*, 928 F2d 542, *cert denied* 502 US 818), the present actions do not involve a challenge to the power of an Indian nation. Quite the contrary, the central issue raised by the complaints in these cases is the authority of the Governor to enter into a Tribal-State compact without legislative concurrence.

Further, in the event that the present actions were to result in a declaration of the invalidity of the compact and amendment and such declaration were to serve as a predicate for a future action threatening more concrete injury to the Tribe, perhaps a more compelling case for dismissal based on nonjoinder could be made in such action. The mere possibility of such further action provides an insufficient basis for dismissal in this action, however. For similar reasons, we also reject defendant's contention that no effective judgment can be rendered in the absence of the Tribe. Contrary to defendants' assertion, plaintiffs do not seek to enjoin the Tribe from conducting gambling at its casino. With the exception of the Wright plaintiffs' attack on the amendment, all affirmative relief demanded by plaintiffs is prospective only.

We are also unpersuaded that the Tribe's interests are not being adequately represented by defendants. A person might

not be an indispensable party if the absent person is united in interest with a party such that they "stand or fall together" (*Matter of Mount Pleasant Cottage School Union Free School Dist. v Sobol*, 163 AD2d 715, 716, *affd* 78 NY2d 935; *see*, *Matter of Storrs v Holcomb*, 245 AD2d 943, 945). Even accepting defendants' speculation that the damage suffered by the Tribe in the event of a judgment in favor of plaintiffs will be different in kind and extent than that suffered by defendants, the fact remains that the defense pursued by defendants is identical to the one that would be undertaken by the Tribe if it were a party to the action. Notably, the outcome of both actions turns on the resolution of pure legal issues involving the construction of State and Federal statutes and constitutions. No suggestion is made that the Tribe's lawyers would be likely to make a more persuasive argument on these issues than the ones that will be made by defendants if the actions are permitted to continue.

Based upon the foregoing, we conclude that the Tribe is not an indispensable party and that the actions may proceed in its absence. Rather than remit the matter to Supreme Court for consideration of the additional issues raised on the motions, we will endeavor to expedite a determination of the actions on the merits by resolving them ourselves.

### III.

A plaintiff has standing to maintain an action when that plaintiff has suffered an injury in fact and such injury falls within the zone of interests to be protected by the statute or constitutional provision involved (*see*, *Society of Plastics Indus. v County of Suffolk*, 77 NY2d 761, 772-773). Here, plaintiffs argue that they have standing as voters and as citizen taxpayers under State Finance Law § 123-b, organizational standing on behalf of members who either are opposed to gambling, favor constitutional action or, in the case of the Saratoga County Chamber of Commerce, would allegedly be hurt by the diversion of gamblers from Saratoga to the tribal casinos, and as individual members of the Legislature who were denied the right to vote on the approval of the compact. For the reasons that follow, it is our view that plaintiffs in both actions have standing.

First, we agree with plaintiffs that they have standing under State Finance Law § 123-b, which provides standing for citizen taxpayers in a suit concerning the wrongful misappropriation, expenditure or illegal disbursement of State funds (*see*, State

Finance Law § 123-b [1]). "Since most activities can be viewed as having some relationship to expenditures * * * too broad a reading of section 123-b would create standing for any citizen who had the desire to challenge virtually all governmental acts" (*Rudder v Pataki*, 93 NY2d 273, 281), and governmental acts which only incidentally involve State finances cannot be challenged based on State Finance Law § 123-b (*see, id.*, at 280-281; *Matter of Transactive Corp. v New York State Dept. of Social Servs.*, 92 NY2d 579, 588-589; *Public Util. Law Project v New York State Pub. Serv. Commn.*, 252 AD2d 55, 58-59; *Matter of Gerdts v State of New York*, 210 AD2d 645, 647-648, *lv denied* 85 NY2d 810, *appeal dismissed* 85 NY2d 856). Here, however, we conclude that plaintiffs' challenge to the expenditure of moneys to implement a casino-gambling compact that was not approved by the Legislature, including the expenditure of funds to pay State Police personnel providing security and State Racing and Wagering Board employees regulating the casinos on a 24-hour basis, has "a sufficient nexus to fiscal activities of the State to allow for section 123-b standing" to the citizen-taxpayer plaintiffs in both actions (*Rudder v Pataki, supra*, at 281; *see, Matter of Schulz v Silver*, 212 AD2d 293, 296, *appeal dismissed* 86 NY2d 835, *lv dismissed and denied* 87 NY2d 916; *compare, Matter of Gerdts v State of New York, supra*).

■ Next, we address defendants' argument that the plaintiff organizations lack standing. Organizational standing requirements are intended to "ensure that the requisite injury is established and that the organization is the proper party to seek redress for that injury" (*Society of Plastics Indus. v County of Suffolk, supra*, at 775). An organization seeking standing must establish that (1) one or more of its members has been harmed, (2) the interests it asserts are germane to its purposes so as to demonstrate that it is an appropriate representative of those interests, and (3) the case would not require the participation of individual members (*see, Rudder v Pataki, supra*, at 278).

New Yorkers for Constitutional Freedoms is a not-for-profit corporation representing approximately 1,650 churches and groups throughout the State whose individual members are opposed to casino gambling and support the constitutional operation of government. The Coalition Against Casino Gambling is a not-for-profit association whose individual members reside primarily in the Catskills and are opposed to casino gambling in that region. Similarly, the Western New York Coalition

Against Casino Gambling is an unincorporated association representing religious organizations and grassroots citizens who oppose casino gambling in this State. The interests asserted by the foregoing organizations are germane to their purposes and their individual members claim to have suffered directly from constitutional violations. Contrary to defendants' arguments that the organizations' allegations are nothing more than "generalized grievances unsuited to judicial review," it is our view that they have alleged cognizable harm to their members and that the requirements for standing have been met (*see, Subcontractors Trade Assn. v Koch*, 62 NY2d 422, 426; *National Org. for Women v State Div. of Human Rights*, 34 NY2d 416, 419-420; *cf., Rudder v Pataki, supra,* at 279).

■ We agree with defendants, however, that the Saratoga County Chamber of Commerce does not have standing. That organization asserts that it represents over 2,300 businesses and professional organizations whose economic livelihood depends on pari-mutuel bettors at the racetrack, which bettors may be lured away by the Tribe's existing casino and the casino planned for Monticello. In our view, the harm claimed is too speculative and attenuated to constitute an injury in fact (*see, Rudder v Pataki, supra,* at 280). In any event, the constitutional provisions relied upon, relating to separation of powers and gambling, were certainly not intended for the protection of competing gambling facilities (*see, Matter of Troy Ambulance Serv. v New York State Dept. of Health*, 260 AD2d 715, 716; *Matter of LaSalle Ambulance v New York State Dept. of Health*, 245 AD2d 724, *lv denied* 91 NY2d 810).

■ There is also no merit to the Saratoga plaintiffs' contention that they have voter standing because, as voters, they are entitled to the protection of the State's constitutional provisions regarding gambling, which can only be changed by a referendum approved by the State's voters. Voter standing arises when the right to vote is eliminated or votes are diluted (*see, Rudder v Pataki, supra,* at 281; *see also, Schulz v State of New York*, 84 NY2d 231, 240-241, *cert denied* 513 US 1127). In the present case, none of the constitutional or statutory provisions invoked by plaintiffs regarding separation of powers or gambling implicate the right to vote.

■ Finally, plaintiffs Frank Padavan and William Parment and the Wright plaintiffs seek standing as legislators but have not shown a particularized injury or established the absence of adequate political remedies. Indeed, their claim of standing is based on a loss of political power rather than the assertion

that they have been deprived of something to which they personally are entitled (*cf.*, *Powell v McCormack*, 395 US 486, 496). Unlike the cases relied upon by plaintiffs where standing was found because the defendants' actions affected legislators' statutory rights or duties (*see*, *Winner v Cuomo*, 176 AD2d 60 [Members of the State Assembly claimed that Governor's failure to submit timely budget bills reduced their time to consider the bills]; *Matter of Sullivan v Siebert*, 70 AD2d 975 [as a member of the Legislature, the plaintiff was entitled to receive a copy of the defendant's report]), here, none of defendants' actions precluded the Legislature from acting and the claim that defendants acted improperly does not differentiate the legislative plaintiffs from the general public (*see*, *Raines v Byrd*, 521 US 811; *Chenoweth v Clinton*, 181 F3d 112, 115-116, *cert denied* 529 US 1012; *Matter of Posner v Rockefeller*, 26 NY2d 970; *Silver v Pataki*, 274 AD2d 57). While these plaintiffs do not have standing as legislators, they do have standing under the State Finance Law.

### IV.

We also reject the contention that the actions are preempted by Federal law. Although it cannot be denied that IGRA is a Federal statute and that the regulation of Indian affairs is generally a Federal matter, we conclude that the narrow issues raised in these complaints are not preempted by Federal law. "IGRA says nothing specific about how we determine whether a state and tribe have entered into a valid compact. State law must determine whether a state has validly bound itself to a compact" (*Pueblo of Santa Ana v Kelly*, 104 F3d 1546, 1557, *cert denied* 522 US 807 [citation omitted]; *see*, *Gaming Corp. v Dorsey & Whitney*, 88 F3d 536, 544 [while IGRA generally preempts State law, the Tribal-State compact provides the only avenue for significant State involvement]). Additionally, the Federal Department of the Interior opined that a governor's authority to enter into a Tribal-State compact is a matter of State law. Fundamentally, the interpretation given to a statute by the agency charged with enforcing it is entitled to great deference (*see*, *Chevron, U.S.A. v Natural Resources Defense Council*, 467 US 837, 844; *Matter of Brown v Wing*, 93 NY2d 517, 524; *Matter of Goff v New York State Dept. of Social Servs.*, 222 AD2d 83, 87).

Nor are we persuaded that the actions are barred by the Statute of Limitations or laches. The four-month limitations period of CPLR 217, which is pressed by defendants, would ap-

ply only if the actions could have been brought as a CPLR article 78 proceeding (see, *New York City Health & Hosps. Corp. v McBarnette*, 84 NY2d 194, 201-202). Here, the substance of the complaints is that the State's chief executive officer acted or threatens to act in violation of law or in excess of the powers conferred upon him by the State Constitution. In our view, neither of the actions could have been brought as a CPLR article 78 proceeding and the four-month Statute of Limitations of CPLR 217 accordingly does not apply (see, *Matter of Hamptons Hosp. & Med. Ctr. v Moore*, 52 NY2d 88, 96; *Matter of McGinley v Hynes*, 51 NY2d 116, 124, cert denied 450 US 918; cf., *New York City Health & Hosps. Corp. v McBarnette*, supra, at 204). As for laches, it should suffice to note that no party to the action has been prejudiced by plaintiffs' delay in bringing its challenge to the 1993 compact (see, *Matter of Schulz v State of New York*, 81 NY2d 336, 348). Obviously, were the Tribe to voluntarily join as a party it could raise laches as a defense, with some likelihood of success (see, *Matter of Stockdale v Hughes*, 189 AD2d 1065, 1067).

█ Finally, we agree with defendants that so much of the claims as seeks to restrain the development of a gambling casino at the Monticello site is not ripe for review. "Where the harm sought to be enjoined is contingent upon events which may not come to pass, the claim to enjoin the purported hazard is nonjusticiable as wholly speculative and abstract" (*Matter of New York State Inspection, Sec. & Law Enforcement Empls. v Cuomo*, 64 NY2d 233, 240 [citation omitted]; see, *New York Pub. Interest Research Group v Carey*, 42 NY2d 527, 531). "However, where the practical likelihood is that the future contingency will occur, the action may proceed" (*Prodell v State of New York*, 211 AD2d 966, 967-968 [citations omitted]). In this case, although the Secretary of the Interior has during the pendency of the action approved the land trust agreement, the Governor has neither taken action nor given any indication that he intends to take action on it.

To summarize, we have determined the following: (1) the Tribe is not an indispensable party and the actions may proceed in its absence; (2) plaintiffs have standing under State Finance Law § 123-b (1), three of the plaintiff organizations have standing and both actions may therefore proceed; plaintiffs have neither voter standing nor standing as legislators, however; (3) the narrow issues raised in these complaints are not preempted by Federal law; (4) the actions are not barred by either the Statute of Limitations or laches; (5) that

part of the claims as seeks to restrain the development of a gambling casino at the Monticello site is not ripe for review.

In view of the foregoing, we conclude that Supreme Court should have denied all of the parties' motions except so much of defendants' motions as sought to dismiss the branch of the complaints addressed to the proposed Monticello casino and the part of defendants' motion dismissing the complaint by Saratoga County Chamber of Commerce for lack of standing.

CARDONA, P. J., CREW III, SPAIN and LAHTINEN, JJ., concur.

Ordered that the judgment is reversed, on the law, without costs, defendants' motions to dismiss denied except to the extent that so much of the complaints as seeks to enjoin the establishment of a gambling casino in the Village of Monticello, Sullivan County, is dismissed as premature, and motions granted as to plaintiff Saratoga County Chamber of Commerce; and matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision.