DAIRYLAND GREYHOUND PARK, INC., Plaintiff-
Appellant,

v.

Scott McCALLUM, in his official capacity as Gover-
nor of the State of Wisconsin, and George Light-
bourn, in his official capacity as Secretary of the
Wisconsin Department of Administration,
Defendants-Respondents.†

Court of Appeals

*No. 02–1204. Submitted on briefs August 30, 2002.—Decided
September 19, 2002.*

**2002 WI App 259**

(Also reported in 655 N.W.2d 474.)

† Petition to review denied 11-12-02.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Ronald R. Ragatz, Peter A. Peshek* and *Mindy Rowland Buenger* of *DeWitt Ross & Stevens S.C.*, Madison.

On behalf of the defendants-respondents, the cause was submitted on the brief of *John S. Greene* and *Thomas C. Bellavia*, assistant attorney generals, *James*

*E. Doyle*, attorney general, and *Raymond P. Taffora* of *Michael, Best & Friedrich LLP*, Madison.

A nonparty brief was filed by *Carol J. Brown* of *Brown & LaCounte, LLP*, Madison, *Douglas B.L. Endreson* and *William R. Perry* of *Sonosky, Chambers, Sachse, Endreson & Perry*, Washington, D.C., *Howard Bichler*, Hertel, *Jennifer L. Nutt Carleton* and *Rory E. Dilweg* of *Oneida Law Office*, Oneida, *Paul Stenzel* and *Douglas William Huck*, Bowler, *Sheila D. Corbine*, Black River Falls, *Kevin L. Osterbauer*, Odanah, *Larry Leventhal* of *Larry Leventhal & Associates*, Minneapolis, MN., *Kris M. Goodwill*, Hayward, *Jeffery A. Crawford*, Milwaukee, *Eric N. Dahlstrom* of *Rohnstein, Donatelli, Hughes, Dahlstrom, Schoenburg & Frye, LLP*, Phoenix, AZ., *Andrew S. Caulum* of *Caulum Law Office, S.C.*, Madison, and *David M. Ujke*, Bayfield on behalf of the St. Croix Chippewa Indians of Wisconsin, Lac du Flambeau Band of Lake Superior Chippewa Indians, Oneida Tribe of Indians of Wisconsin, Forest County Potawatomi Community of Wisconsin, Ho-Chunk Nation, Stockbridge-Munsee Community, Sokaogon Chippewa Community (Mole Lake Band of Lake Superior Chippewa Indians), Bad River Band of the Lake Superior Tribe of Chippewa Indians, Lac Courte Oreilles Band of Lake Superior Chippewa Indians of Wisconsin, and Red Cliff Band of Lake Superior Chippewa Indians.

A nonparty brief was filed by *Alexis H. Johnson*, Show Low, AZ and *Michael D. Dean*, Waukesha, for Kenosha Coalition Against Legalized Gambling.

A nonparty brief was filed by *Paul G. Kent* of *Davis & Kuelthau, S.C.*, Madison, for Village of Hobart and Brown County.

Before Vergeront, P.J., Deininger and Lundsten, JJ.

¶ 1. DEININGER, J. Dairyland Greyhound Park, Inc., appeals an order dismissing its complaint against Governor McCallum for failure to join an indispensable party. Dairyland's action seeks to enjoin the Governor from renewing the state's gaming compacts with Indian tribes having reservations or other land in Wisconsin. The circuit court concluded that the tribes are "necessary parties" to the litigation under WIS. STAT. § 803.03(1) (1999–2000),[1] and because the tribes cannot be joined as parties, that Dairyland's action should be dismissed pursuant to § 803.03(3). We conclude that the circuit court erred in determining that the tribes are indispensable parties in whose absence the action should not proceed. We therefore reverse the order dismissing the action and remand for further proceedings on Dairyland's complaint.

## BACKGROUND

¶ 2. The following background information is taken, in some instances verbatim, from the Legislative Reference Bureau's Research Bulletin 00–1, *The Evolution of Legalized Gambling in Wisconsin* (May 2000) (cited in this opinion as "LRB").

¶ 3. The Wisconsin Constitution contained "an absolute . . . prohibition of any gaming activity" for the first one hundred seventeen years of the state's existence. LRB at 1. Beginning in 1965, however, constitutional amendments were ratified permitting, in succession, sweepstakes and other promotional contests, charitable bingo and raffles, and in 1987, pari-mutuel on-track betting on racing and a state lottery. *Id.* The

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted. The text of WIS. STAT. § 803.03(1) and (3) is quoted below in ¶ 8 of this opinion.

215

confluence of the state lottery amendment and federal law relating to gaming activities conducted by Indian tribes has resulted in the present circumstances where "Wisconsin's 11 Indian tribes or bands currently operate 16 major casinos throughout the state, which offer Blackjack, electronic gambling machines, and pull-tabs" under compacts negotiated with the state. *Id.* at 20.

¶ 4. Because neither the circuit court's ruling nor ours addresses the merits of Dairyland's claim, it is not necessary to discuss in detail the legal underpinnings of Wisconsin's Indian gaming compacts. It is sufficient to note that federal statutes and case law generally allow tribes to conduct any form of gambling on their lands that a given state permits, free, however, of regulation by the state except as may be negotiated in state-tribal compacts. *See* LRB at 20–22; *see also Lac du Flambeau Band of Lake Superior Chippewa Indians v. Wisconsin,* 770 F. Supp. 480 (W.D. Wis. 1991), *appeal dismissed,* 957 F.2d 515 (7th Cir. 1992); 25 U.S.C. §§ 2701–21 (2002) (The "Indian Gaming Regulatory Act"); 80 Op. Att'y Gen. 53 (1991).

¶ 5. By June 1992, Wisconsin had entered into seven-year gaming compacts with eleven tribes, all of which have been extended for five-year terms expiring in 2003 and 2004. LRB at 23. The compacts all contain renewal clauses which read substantially as follows:

> The duration of this Compact shall . . . be automatically extended for terms of five years, unless either party serves written notice of nonrenewal on the other party not less than one hundred eighty days prior to the expiration of the original term of this Compact or any extension thereof.

Dairyland seeks an injunction prohibiting the Governor "from entering into any new, modified, extended or

renewed gaming compacts with any Indian tribe purporting to allow casino gambling and requiring [him] to issue timely notice of nonrenewal of each compact."[2] Dairyland's principal legal theory is that the ratification in 1993 of yet another constitutional amendment[3] deprives the Governor of whatever authority may have once existed for permitting the tribes to conduct casino-type gaming in Wisconsin under the compacts.

¶ 6. The Governor moved to dismiss the action for failure to join indispensable parties—"the eleven Indian tribes who are parties to the gaming compacts with the State."[4] The court granted the Governor's motion and Dairyland appeals.

---

[2] The legislature has authorized the Governor to negotiate and enter into gaming compacts. *See* WIS. STAT. § 14.035. Dairyland also named the secretary of the Department of Administration as a defendant because of the duties delegated to that office under WIS. STAT. § 569.02 (e.g., coordination of Indian gaming regulatory activities; functioning as a liaison between Indians, the public, and the state; assisting the Governor in determining the types of gaming to be conducted under the compacts). We will refer to the defendants-respondents collectively as the Governor.

[3] The 1993 amendment clarified that "all forms of gambling are prohibited except bingo, raffles, pari-mutuel on-track betting and the current state-run lottery." LRB at 11.

[4] Ten of the eleven tribes filed an amicus curaie brief in the trial court supporting the Governor's motion. Other entities, being charities who had "received support" from one of the tribes that "derived from" its gaming revenues, also filed amicus briefs in support of the motion. Filing amicus briefs in this court were the following: ten tribes having compacts with the state, who support the Governor's position; the Kenosha Coalition Against Legalized Gambling and the Village of Hobart and Brown County, who join Dairyland in seeking a reversal.

## ANALYSIS

¶ 7. We emphasize at the outset that the merits of Dairyland's suit for an injunction are *not* before us in this appeal. We express no view regarding whether, under the present state of the law on gambling in Wisconsin, and under applicable federal statutes and precedents, the Governor should be enjoined from permitting Wisconsin's Indian gaming compacts to be extended beyond their current expiration dates. The only question we decide is whether Dairyland's claim for that relief may be heard and resolved in a Wisconsin court, despite the inability of Dairyland to join the tribes as parties to its lawsuit.

¶ 8. The procedural rule at the center of the issues we address is WIS. STAT. § 803.03, which provides in relevant part as follows:

> **(1)** PERSONS TO BE JOINED IF FEASIBLE. A person who is subject to service of process shall be joined as a party in the action if:

> (a) In the person's absence complete relief cannot be accorded among those already parties; or

> (b) The person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may:

> 1. As a practical matter impair or impede the person's ability to protect that interest; or

> 2. Leave any of the persons already parties subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of his or her claimed interest.

> . . . .

> **(3)** DETERMINATION BY COURT WHENEVER JOINDER NOT

218

FEASIBLE. If any such person has not been so joined, the judge to whom the case has been assigned shall order that the person be made a party. If the person should join as a plaintiff but refuses to do so, the person may be made a defendant, or, in a proper case, an involuntary plaintiff. If a person as described in subs. (1) . . . cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include:

(a) To what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties;

(b) The extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided;

(c) Whether a judgment rendered in the person's absence will be adequate; and

(d) Whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

¶ 9. As the statute's language and structure suggest, the "indispensable party" inquiry is in two parts. We must first determine if the tribes are "necessary" parties for one of the three reasons set forth in WIS. STAT. § 803.03(1). Dairyland asserts that the tribes meet none of the requirements for being a "necessary" party to the present litigation. If that is true, they cannot be deemed "indispensable" under § 803.03(3), and our inquiry will be at an end. *See Makah Indian Tribe v. Verity*, 910 F.2d 555, 559 (9th Cir. 1990). If we conclude, however, that the circuit correctly declared

the tribes necessary parties under § 803.03(1), we must then consider whether the circuit court also correctly determined that, "in equity and good conscience," the action should not proceed in the absence of the tribes, as provided in § 803.03(3).[5]

█

¶ 10. Our first task is to ascertain the proper standard for our review of the circuit court's determination that, because the tribes are parties to the gaming compacts which Dairyland seeks to have nonrenewed, the tribes are necessary parties to this litigation under Wis. Stat. § 803.03(1). We have indicated on at least one occasion that our review of this determination is of the circuit court's exercise of discretion. *See Wisconsin State Journal v. University of Wisconsin-Platteville*, 160 Wis. 2d 31, 44, 465 N.W.2d 266 (Ct. App. 1990) ("We conclude the trial court did not abuse its discretion by refusing to join [named individuals] as necessary parties under sec. 803.03(1), Stats."). More recently, however, the supreme court has noted that the necessary party inquiry under § 803.03(1)(b), 1 (whether a person who "claims an interest relating to the subject of the action . . . is so situated that the disposition in the person's absence may . . . [a]s a practical matter impair or impede the person's ability to protect that interest") is the equivalent of the inquiry under Wis. Stat. § 803.09(1) to determine whether a person is entitled to intervene in an action "as a matter

---

[5] Dairyland does not dispute that the tribes "cannot be made a party" to this action, which is a prerequisite for dismissal of the action under Wis. Stat. § 803.03(3). We accept the concession without further discussion. *See, e.g., Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978) (Indian tribes possess "the common-law immunity from suit traditionally enjoyed by sovereign powers.").

of right." *City of Madison v. WERC*, 2000 WI 39, ¶ 11 n.8, 234 Wis. 2d 550, 610 N.W.2d 94.[6] Whether a party is entitled to intervene in an action as a matter of right under § 803.09(1) is a question of law which is decided de novo on appeal. *Armada Broad., Inc. v. Stirn*, 183 Wis. 2d 463, 470, 516 N.W.2d 357 (1994).

¶ 11. The Governor's principal argument in favor of affirming the circuit court's determination that the tribes are necessary parties is that the tribes' ability to protect their substantial financial interest in the continuation of the gaming compacts would be impaired or impeded if they were not parties to this action. The Governor thus asserts that the tribes claim an interest

---

[6] The relevant language in WIS. STAT. § 803.09(1) is virtually identical to WIS. STAT. § 803.03(1)(b)1: "Upon timely motion anyone shall be permitted to intervene in an action when *the movant claims an interest relating to the property or transaction which is the subject of the action and the movant is so situated that the disposition of the action may as a practical matter impair or impede the movant's ability to protect that interest* . . . ." WIS. STAT. § 803.09(1) (emphasis added). We note, however, that § 803.03(1)(b)1 does not expressly include a consideration of whether the prospective party's "interest is adequately represented by existing parties," as does § 803.09(1). The Governor and Dairyland nonetheless discuss (and dispute) whether the interest of the tribes is adequately represented by the Governor in this case. We agree that it is a proper factor to consider under WIS. STAT. § 803.03, either when determining if the tribes' ability to protect their interest would "as a practical matter" be impaired or impeded if not made parties under subsection (1), or when considering whether the tribes would be prejudiced if the action were to proceed in their absence under subsection (3). We address the question below, after our explanation of why the tribes' claimed interest in the subject of this litigation is sufficient to render them necessary parties.

in the subject of this litigation that would entitle them to intervene as a matter of right were they to seek to do so. He therefore concedes that the question of whether the tribes' claimed interest is sufficient to render them necessary parties under WIS. STAT. § 803.03(1)(b)1 is a question of law which we should decide de novo. We do so in the paragraphs which follow.

¶ 12. Dairyland does not take issue with the Governor's assertions that the tribes garner substantial revenues and profits from the casino gambling operations they conduct pursuant to the compacts, and that the economic impact on the tribes of termination or nonrenewal of the compacts, in the circuit court's words, would be "catastrophic." Rather, Dairyland argues that the tribes' interest in this litigation is insufficient to deem them necessary parties because the compacts do not give them a "legally protected" or "enforceable" right to renewal inasmuch as the Governor has, in Dairyland's view, "an unfettered right to nonrenew" the compacts. The Governor concedes that the compact provisions "may not have entirely guaranteed renewal of the compacts."

¶ 13. In a recent case implicating WIS. STAT. § 803.03(1), we concluded that a town that was engaged in litigation seeking a constructive trust over certain real estate, having filed a lis pendens against the property, claimed a sufficient interest under the statute to remain a party in a foreclosure action involving the parcel even though the town had not yet obtained a judgment establishing the trust. *Ross v. Specialty Risk Consultants, Inc.*, 2000 WI App 258, ¶ 27, 240 Wis. 2d 23, 621 N.W.2d 669. We further concluded that the "disposition of the mortgage foreclosure in [the town's] absence would, as a practical matter, impede the Town's ability to protect that interest." *Id.* Absent from our

discussion or conclusion was any mention of a requirement that the town have a "legal" or "legally protected" interest in the subject of the foreclosure action.[7]

¶ 14. We agree with Dairyland that Wisconsin case law provides little direct guidance on the question of what type of interest a potential party must claim in order to be deemed a necessary party under WIS. STAT. § 803.03(1)(b). However, given the similarity of the necessary party inquiry in this case to the intervention as of right inquiry (see ¶ 10 and footnote 6), we conclude that we may look for guidance to Wisconsin

---

[7] We did employ the term "legal interest" in *Wisconsin State Journal v. University of Wisconsin-Platteville*, 160 Wis. 2d 31, 43, 465 N.W.2d 266 (Ct. App. 1990) ("[T]he Al Yasiris have no legal interest in this action. *See* sec. 803.03(1)(b)."). In our decision we affirmed the circuit court's refusal to join the subjects of an investigation as necessary parties in an open records mandamus action seeking access to records of the investigation. In doing so, we relied on the fact that "[o]nly the records custodian, not individuals who are the subjects of public records, may seek to prevent inspection." *Id.* (citing *State ex rel. Bilder v. Township of Delavan*, 112 Wis. 2d 539, 558, 334 N.W.2d 252 (1983)). The supreme court has since clarified, however, that *Bilder* does *not* stand for the proposition that the interest of subjects of public records in a mandamus action seeking access to the records is insufficient to allow the subjects to intervene as of right under WIS. STAT. § 803.09(1). *Armada Broad., Inc. v. Stirn*, 183 Wis. 2d 463, 472–73, 516 N.W.2d 357 (1994). It thus appears that our analysis in *Wisconsin State Journal* may no longer be good law. *See Armada*, 183 Wis. 2d at 472–73 ("The court of appeals denied [the subject of requested records]'s motion on the basis that [he] lacked a legally protected interest in intervening . . . . The court of appeals' reliance on this [quoted] language in *Bilder* was misplaced . . . . [The statement in *Bilder* that 'it is the legal custodian of the record, not the citizen, who has the right to have the record closed'] has no affect [sic] upon our decision regarding intervention.").

precedents discussing the nature of the interest required for intervention as a matter of right. We further conclude that the required interest is defined broadly in Wisconsin law, and that it goes well beyond the concept of a "legally protected" interest, as Dairyland argues.

¶ 15. The "interest" test applicable in Wisconsin to intervention of right inquiries involves a "pragmatic approach," one that is " 'primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process.' " *Armada Broad., Inc.*, 183 Wis. 2d at 472 (citation omitted). We have previously concluded that "under the practical, non-technical approach" espoused by the supreme court in *Armada*, "there is no requirement that the potential intervenor's interest be 'judicially enforceable' in a separate proceeding." *Wolff v. Town of Jamestown*, 229 Wis. 2d 738, 744, 601 N.W.2d 301 (Ct. App. 1999). The relevant inquiry in Wisconsin is thus not whether a prospective party has a legal or legally protected interest in the subject of an action, but whether the person or entity has " 'an interest of such direct and immediate character that the [prospective party] will either gain or lose by the direct operation of the judgment.' " *City of Madison*, 2000 WI 39, ¶ 11 n.9 (citation omitted).

¶ 16. We thus conclude that it is not necessary for the tribes to have a legally enforceable right to continue conducting casino gambling in order for them to have a sufficient interest in this litigation to be deemed necessary parties. The tribes bargained for (and obtained) provisions "automatically" extending the compacts, un-

less the Governor gives timely notice of nonrenewal.[8] Dairyland seeks in this lawsuit to deprive the Governor of the ability to exercise his discretion or political judgment regarding the extension of the current compacts. We agree with the Governor that because a judgment could be entered enjoining him from permitting the compacts to be extended under any circumstances, the tribes " 'will either gain or lose by the direct operation of the judgment.' " *Id.* (citation omitted). The tribes' interest in preserving their opportunity to convince the Governor of the wisdom of permitting the compacts to be extended beyond their current expiration dates is therefore a sufficient interest to render the tribes necessary parties under WIS. STAT. § 803.03(1)(b)1.

¶ 17. We must next inquire whether the tribes are "so situated that the disposition of the action in the [tribes]' absence may . . . [a]s a practical matter impair or impede [their] ability to protect that interest." WIS. STAT. § 803.03(1)(b), 1. Dairyland asserts that the tribes cannot meet this test because (1) the Governor can adequately protect the tribes' interests, and (2) the tribes' participation in the litigation as amicus curaie ensures that their concerns will be heard. We disagree on both points.

¶ 18. Although it is true that the Governor may be as interested as the tribes are in protecting his ability to exercise discretion and political judgment regarding the extension of the current Indian gaming compacts, there is little question that the financial

---

[8] We note, however, that even if a notice of nonrenewal is given by either party, the compacts provide that a tribe may request to negotiate a successor compact, and the State is obligated to negotiate "in good faith concerning the terms of a successor compact."

consequences of not renewing the compacts would fall disproportionately on the tribes.[9] *See Wolff*, 229 Wis. 2d at 749 (concluding that the fact that a potential party has "more at stake" than an existing party weighs in favor of a determination that the existing party cannot adequately represent the potential party's interest). Moreover, even though the Governor and the tribes may currently be aligned in their desire to defeat Dairyland's claims, they have historically exhibited significant differences over issues relating to the scope of Indian gaming in Wisconsin. *See Lac du Flambeau Band of Lake Superior Chippewa Indians v. Wisconsin*, 770 F. Supp. 480 (W.D. Wis. 1991), *appeal dismissed*, 957 F.2d 515 (7th Cir. 1992). Finally, we observe that the tribes may be in a much better position than the Governor to advocate the supremacy of federal law in constraining a state's ability to curtail Indian gaming once compacts have been entered into. That is, the tribes may wish to take positions which the Governor might dispute, or at the very least, be reluctant to espouse. *See Wolff*, 229 Wis. 2d at 748–49 (noting that interests "need not be wholly adverse" to negate adequate representation, it being sufficient that a potential party be in a position to more vigorously advocate a certain result).

¶ 19. Thus, the presence of the Governor as a party in this action does not permit us to conclude that, as a practical matter, the tribes' ability to protect their interests in having the compacts extended is not im-

---

[9] The state is projected to receive "payments averaging $23.7 million annually" from the tribes pursuant to the current compacts, while "it has been estimated that statewide the tribes realize total casino profits of about $300 million per year." LRB at 24.

paired or impeded by their absence. Similarly, the tribes' participation as amicus curaie perhaps lessens but does not remove the disability they suffer from not being parties. Although amicus status may give the tribes a voice on certain issues at certain times, it does not secure to them the procedural rights and protections of a party, for example, to engage in discovery, to file dispositive motions, or to appeal an adverse decision. *See Wichita & Affiliated Tribes of Oklahoma v. Hodel*, 788 F.2d 765, 775 (D.C. Cir. 1986) ("Being party to a suit carries with it significant advantages beyond the amicus' opportunities, not the least of which is the ability to appeal an adverse judgment.") In short, we conclude that if a person otherwise meets the requirements for being a necessary party under WIS. STAT. § 803.03(1), granting that person amicus status cannot obviate the statute's requirement that the person be joined as a party in the action "if feasible."

¶ 20. Given that the tribes cannot be made parties, the final question to be resolved is whether, "in equity and good conscience the action should proceed among the parties" now before the court, or alternatively, whether the action should be dismissed, as the circuit court concluded. WIS. STAT. § 803.03(3). Dairyland cites *National Operating, L.P. v. Mutual Life Insurance Co. of New York*, 2001 WI 87, ¶ 28, 244 Wis. 2d 839, 630 N.W.2d 116, for the proposition that our review of a circuit court's action on a motion to dismiss generally presents a question of law which we review de novo. The Governor, however, asserts that no Wisconsin case has directly addressed the proper standard for appellate review of a circuit court's determination that a necessary party either is or is not "indispensable" under § 803.03(3). The Governor asks us to follow federal court decisions holding that appellate courts must

review determinations under Fed. R. Civ. P. 19(b) (the federal counterpart to § 803.03(3)), for an erroneous exercise of trial court discretion.

¶ 21. We have been unable to locate Wisconsin precedent on the issue of the proper standard of review to be applied to determinations under WIS. STAT. § 803.03(3). The language of the rule ("whether in equity and good conscience the action should proceed," § 803.03(3)) suggests a discretionary weighing of factors, and some federal courts have concluded that appellate review is of the district court's discretion. *See, e.g., Davis v. United States*, 192 F.3d 951, 957 (10th Cir. 1999) ("This court reviews ['necessary and/or indispensable' party] determinations under an abuse of discretion standard."); *Makah Indian Tribe*, 910 F.2d at 560 ("We conclude that the district court's determination that the absent tribes are indispensible to the Makah's claim for reallocation was not an abuse of discretion."). The Seventh Circuit, however, has expressly declined to choose between de novo review and "an abuse-of-discretion standard" when reviewing a district court's "Rule 19 dismissal." *United States ex rel. Hall v. Tribal Dev. Corp.*, 100 F.3d 476, 478 (7th Cir. 1996).

¶ 22. We also observe that even though it espouses an abuse of discretion standard of review, the Tenth Circuit includes the caveat that "[u]nderlying legal conclusions supporting Rule 19 determinations, however, are reviewed de novo." *Davis*, 192 F.3d at 957. Moreover, the same court has concluded that it may raise (and decide) the issue of a party's indispensability sua sponte, even though the issue was not raised by any party in the trial court or on appeal. *Enterprise Mgmt. Consultants, Inc. v. United States ex rel. Hodel*, 883 F.2d 890, 892 (10th Cir. 1989). The California Court of Appeals has adopted the federal "abuse of discretion"

standard in reviewing a determination under the state's counterpart rule. *See People ex rel. Lungren v. Community Redevelopment Agency for the City of Palm Springs,* 65 Cal. Rptr. 2d 786, 790–91 (Cal. Ct. App. 1997). The New York Supreme Court, Appellate Division, however, while nominally espousing a standard for review of trial court discretion, appears to have decided de novo the issue of the indispensability of Indian tribes in an action very similar to this one. *See Saratoga County Chamber of Commerce, Inc. v. Pataki,* 275 A.D.2d 145, 151 (N.Y. App. Div. 2000) (*"In our view,* a balanced consideration of these factors militates against the invocation of the harsh and rarely used remedy of dismissing the complaint for nonjoinder of an indispensable party." (emphasis added)).

¶ 23. The Wisconsin Supreme Court has explained that different standards of review may be implicated by each of several determinations a circuit court must make in ruling on a motion to dismiss, or even by different factors to be considered within a single determination. *See Paige K.B. v. Steven G.B.,* 226 Wis. 2d 210, ¶¶ 22–23, 594 N.W.2d 370 (1999). We are thus not persuaded that our only option is to review the circuit court's determination that the tribes are indispensable parties for an erroneous exercise of discretion.

¶ 24. The four factors which a court must consider under Wis. Stat. § 803.03(3) present the following questions: Will the tribes be prejudiced by the rendering of a judgment in this action in their absence? Can any such prejudice be lessened or avoided by protective provisions in the judgment or other measures? Will a judgment in the absence of the tribes be "adequate" with respect to the Governor and Dairyland? Will Dairyland have an adequate remedy if this action is

dismissed for nonjoinder? We conclude that each of these questions is one of law, which we may decide de novo. We further conclude that we are as well situated as the circuit court to weigh and balance the factors in this case, given that the circuit court has not conducted a trial or other evidentiary proceedings. The circuit court did not acquire any "sense" or "feel" for the equities in this case that we cannot acquire equally as well from reviewing the parties' submissions and arguments.

■■

¶ 25. There may be occasions on which the determination of whether a party is indispensable under WIS. STAT. § 803.03(3) will involve findings on disputed issues of fact. The court which makes those findings may then be in a better position than a reviewing court to weigh and balance the relevant factors, and a circuit court's determination may therefore be entitled to deference from this court. *See, e.g., Davis*, 192 F.3d at 961 (declining "to undertake the Rule 19(b) analysis in the first instance," and remanding for factual findings and a "reviewable determination" by the district court). This is not such a case, however, and we therefore proceed to a de novo consideration of whether, on the record before us, "in equity and good conscience the action should proceed" in the absence of the tribes. We conclude that it should.

¶ 26. The circuit court seemingly gave undue, if not controlling, weight to "the importance of preserving the sovereign nation status of the Tribes." It concluded that the controlling factor in its determination must be "the economic interest of the Tribes in the continuation of the revenue that they derive" from gambling operations under the compacts, "and their inability to protect themselves from the prejudice inherent in a future

230

judgment in [Dairyland's] favor." We conclude, however, that the court erred in placing controlling weight on the "prejudice" factor under Wis. Stat. § 803.03(3)(a), without giving proper consideration to whether the remaining factors might outweigh the prejudice inherent to the tribes if Dairyland were to prevail.[10]

¶ 27. The significant interest of the tribes in the outcome of this litigation, and their inability to protect that interest if not made parties, are questions which must be decided in the Governor's favor before the prejudice factor under Wis. Stat. § 803.03(3)(a) is considered. Thus, once the tribes have been deemed necessary parties under § 803.03(1)(b)1, it is almost a foregone conclusion that the outcome of the litigation might be prejudicial to the tribes if rendered in their absence. If the prejudice factor controls the indispensable party determination, there would be little point in conducting a separate indispensable party inquiry. The rule could simply say that a party is both necessary and indispensable whenever the requirements of § 803.03(1)(b)1 are satisfied, but that is not what the rule provides.[11]

---

[10] Thus, even if we were reviewing the circuit court's determination under a discretionary standard, we would conclude the court erred in its interpretation or application of the law, thereby engaging in an erroneous exercise of discretion. *See, e.g., Davis v. United States*, 192 F.3d 951, 961 (10th Cir. 1999) (concluding that district court "erroneously interpreted" precedent as mandating conclusion that tribe was indispensable, and thus abused its discretion in dismissing claim).

[11] Some federal decisions have emphasized the need to give significant weight to protecting the sovereign immunity of Indian tribes when conducting the indispensable party analysis. "When . . . a necessary party . . . is immune from suit, 'there is very little room for balancing of other factors' . . . because

¶ 28. Thus, we conclude that the prejudice factor weighs strongly in favor of a determination that the action should not proceed in the absence of the tribes, but it is not the only factor we must consider, and it is not necessarily the controlling factor.[12]

¶ 29. The circuit court concluded that the second factor (whether "by protective provisions in the judgment, by shaping of relief, or other measures, the prejudice can be lessened or avoided," Wis. Stat. § 803.03(3)(b)) also weighed in favor of the indispensability of the tribes because the case is of the "all or nothing" variety. That is, the Governor will either be enjoined from permitting the compacts to renew, or he will not be. Neither party disputes the point, and we move on to the third factor.

¶ 30. We must next consider whether a judgment entered in this action, absent the participation of the tribes, will be "adequate." Wis. Stat. § 803.03(3)(c). In other words, can Dairyland obtain the relief it is seeking in the absence of the tribes? We see no reason why a judgment in this action would not be adequate to resolve the dispute between Dairyland and the Gover-

immunity ' "may be viewed as one of those interests 'compelling by themselves.' " ' " *Enterprise Mgmt. Consultants, Inc. v. United States ex rel. Hodel*, 883 F.2d 890, 894 (10th Cir. 1989) (citation omitted). Other cases, however, make it clear that tribal immunity from suit it is *not* a trumping factor, such that no litigation in which an Indian tribe may be interested can be allowed to proceed in its absence. *See Davis*, 192 F.3d at 959–60 (clarifying that court did not hold in *Enterprise Mgmt. Consultants* that tribal immunity eliminates the need to weigh the four factors under the indispensable party rule).

[12] We have considered above, and rejected, Dairyland's claim that the tribes would not be prejudiced by a judgment entered in their absence because the Governor adequately represents the interests of the tribes. (See ¶ 18 and footnote 6.)

nor regarding the Governor's authority or lack thereof to extend or renew the compacts. We acknowledge that if Dairyland were to prevail in obtaining an injunction in this action, the tribes might not be precluded from seeking to have the injunction invalidated in a federal court action. The fact that a judgment in this action might be subject to collateral attack, however, does not render it inadequate. We note that the Governor makes no argument that this factor does not weigh in Dairyland's favor in the indispensability determination, but asserts only that the circuit court correctly gave the factor little weight.

¶ 31. The final factor is whether Dairyland will have an adequate remedy if this action is dismissed for nonjoinder of the tribes. The Governor does not dispute that dismissal of this action will leave Dairyland "without a judicial remedy to challenge the provisions of gaming compacts," but contends that this factor is vastly outweighed by the prejudice to the tribes in proceeding without them, as the circuit court concluded. Dairyland, of course, argues just the opposite, and adds that the interests of the public in having the issues it raises resolved tips the scales in favor of permitting the action to continue. We agree with Dairyland.

¶ 32. The parties cite and discuss a number of cases from other jurisdictions having differing outcomes on the question of whether Indian tribes are indispensable parties to various actions in which it is claimed they have an interest.[13] We find persuasive the reasoning of two state courts which each concluded

---

[13] Tribe not indispensable: *Connecticut ex rel. Blumenthal v. Babbit*, 899 F. Supp. 80 (D. Conn. 1995); *State ex rel. Clark v. Johnson*, 904 P.2d 11 (N.M. 1995); *Sac & Fox Nation of Missouri v. Norton*, 240 F.3d 1250 (10th Cir. 2001), *cert. denied*, 534 U.S.

Indian tribes were *not* indispensable parties in light of facts and circumstances closely analogous to those now before us.

¶ 33. The court in *People ex rel. Lungren v. Community Redevelopment Agency for the City of Palm Springs*, 65 Cal. Rptr. 2d 786 (Cal. Ct. App. 1997), gave considerable weight to the interests of the public in having decided the question of whether a public agency had exceeded its lawful authority in transferring public land to an Indian tribe for construction of a casino. *Id.* at 794–95 ("If it is established that the law of California does not permit a court to hear a challenge to the actions of the Agency in the present case because of an inability to join the Tribe in the suit, the effect will be to immunize any local entity from court review of transfers of publicly owned real property to Indian tribes."). The court also gave significant weight to the fourth factor, the lack of remedy available to the plaintiff attorney general if the action were not allowed to proceed. *Id.* at 796.

¶ 34. These same considerations also heavily influenced the New York court in *Saratoga County Chamber of Commerce, Inc. v. Pataki*, 275 A.D.2d 145 (N.Y. App. Div. 2000), where the plaintiffs sought a declaration that (1) the Governor lacked authority to execute Indian gaming compacts, and (2) the gambling permitted under them was prohibited by New York statutes and the state's constitution. *Id.* at 150. In applying its joinder rule, which differently enumerates but incorpo-

1078 (2002). Tribe indispensable: *Wichita & Affiliated Tribes of Oklahoma v. Hodel*, 788 F.2d 765 (D.C. Cir. 1986); *Shermoen v. United States*, 982 F.2d 1312 (9th Cir. 1992); *Enterprise Mgmt. Consultants, Inc. v. United States ex rel. Hodel*, 883 F.2d 890 (10th Cir. 1989); *Makah Indian Tribe v. Verity*, 910 F.2d 555 (9th Cir. 1990).

rates in substance the WIS. STAT. § 803.03(3) factors, the court emphasized the lack of an adequate remedy if the suit were dismissed: "[D]ismissal of the action based upon plaintiffs' inability to obtain jurisdiction over the Tribe would have the effect of absolutely barring resolution of the important and far-reaching issues raised in the complaints." *Id.* at 151–52.[14]

¶ 35. The present litigation does not simply seek to resolve a dispute among private actors. Dairyland's lawsuit asserts that the Wisconsin Constitution, as amended in 1993, precludes the Governor from extending or renewing Indian gaming compacts which allow casino gambling in Wisconsin. There can be little question that the citizens of Wisconsin have a considerable interest in ensuring that state officials act in accordance with the peoples' will as expressed in the state constitution. If this action is dismissed because the tribes cannot be joined as parties, not only will Dairyland have no adequate remedy, but an important legal issue having significant public policy implications will evade resolution. We conclude that, in equity and good conscience, this action, like those we have cited in California and New York, must be allowed to proceed in the absence of the tribes, notwithstanding the potential prejudice to their interests.

---

[14] We agree with Dairyland that it makes no difference whether the interest of the public in having an issue resolved is considered in conjunction with one or more of the enumerated factors, or whether it is deemed a factor (the "public rights exception") to be considered in addition to the nonexclusive factors set out in WIS. STAT. § 803.03(3). *See, e.g., Makah Indian Tribe,* 910 F.2d at 559 n.6 (9th Cir. 1990) (discussing "public rights exception").

## CONCLUSION

¶ 36. For the reasons discussed above, we reverse the appealed order and remand for further proceedings on Dairyland's complaint.

*By the Court.*—Order reversed and cause remanded.