COURT OF APPEALS
DECISION
DATED AND FILED

July 29, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1478**

STATE OF WISCONSIN

Cir. Ct. No. 2021CV2526

IN COURT OF APPEALS
DISTRICT I

---

MIDWEST ENVIRONMENTAL ADVOCATES, INC.,

    PETITIONER-APPELLANT-CROSS-RESPONDENT,

  V.

FREDERICK PREHN,

    RESPONDENT-RESPONDENT-CROSS-APPELLANT,

WISCONSIN DEPARTMENT OF NATURAL RESOURCES AND WISCONSIN NATURAL RESOURCES BOARD,

    RESPONDENTS-RESPONDENTS-CROSS-RESPONDENTS.

---

APPEAL and CROSS-APPEAL from an order of the circuit court for Dane County: EVERETT D. MITCHELL, Judge. *On appeal, final order reversed and cause remanded with directions; on cross-appeal, nonfinal order affirmed*.

Before Donald, P.J., Geenen, and Colón, JJ.

¶1      GEENEN, J.  The instant case stems from a public records request under Wisconsin's Public Records Law, WIS. STAT. §§ 19.31-19.39.[1]  Midwest Environmental Advocates, Inc. ("MEA") filed a complaint alleging that Frederick Prehn, through the Wisconsin Department of Natural Resources ("DNR") and as Chair and Member of the Natural Resources Board ("NRB") (collectively, "Defendants"), violated the Public Records Law by arbitrarily and capriciously denying and delaying production of certain text messages responsive to a records request made by MEA.  Prehn moved to dismiss the complaint, arguing that the requested communications were not "records" and that Prehn was not an "authority" under the Public Records Law.  The circuit court denied the motion, and MEA continued to pursue its records request.

¶2      The parties agreed to a Forensic Inspection Protocol ("Protocol") that included a schedule and procedure for an independent forensic inspection of Prehn's digital devices in order to identify additional responsive records for Prehn to produce.  The circuit court incorporated the schedule and procedure set forth in the Protocol into its scheduling order.  In accordance with that procedure, Prehn provided MEA an additional 159 communications responsive to its initial public records request.

¶3      After production of the records, MEA and Prehn filed cross-motions for summary judgment.  MEA argued in its motion that because it had substantially prevailed on its claims, MEA was entitled to summary judgment, reasonable costs and attorney fees under WIS. STAT. § 19.37(2)(a), and punitive damages under § 19.37(3).  Prehn argued in his motion that he was entitled to

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version.

summary judgment because the case became moot after he voluntarily provided all communications responsive to MEA's initial public records request under the terms of the Protocol. Relying on the majority opinion in a divided Wisconsin Supreme Court decision, *Friends of Frame Park, U.A. v. City of Waukesha*, 2022 WI 57, 403 Wis. 2d 1, 976 N.W.2d 263, the circuit court dismissed MEA's complaint, concluding that Defendants were entitled to summary judgment because the mid-litigation production of the requested records before a judicially sanctioned change in the parties' legal relationship rendered MEA's lawsuit moot.[2]

¶4     Shortly after the circuit court entered summary judgment and dismissed MEA's complaint, we issued *Wisconsin State Journal v. Blazel*, 2023 WI App 18, 407 Wis. 2d 472, 991 N.W.2d 450. After a thorough examination of *Friends of Frame Park*, we concluded that "no majority of justices ruled that voluntary release of requested records in the course of litigation of a public records action renders the action moot." *Blazel*, 407 Wis. 2d 472, ¶38. Thus, we reaffirmed our holding in a prior case "that the voluntary disclosure of a requested record does not render the action moot because a ruling on the merits 'will have the practical effect of determining the [requester's] right to recover damages and fees under WIS. STAT. § 19.37(2)(a) based upon the [custodian's] denial of its request.'" *Blazel*, 407 Wis. 2d 472, ¶43 (quoting *Portage Daily Reg. v. Columbia*

---

[2] In *Friends of Frame Park*, the Wisconsin Supreme Court held that in order to "prevail in whole or in substantial part" under WIS. STAT. § 19.37(2)(a) such that the requester is entitled to costs and attorney fees, the requester "must obtain a judicially sanctioned change in the parties' legal relationship." *Friends of Frame Park, U.A. v. City of Waukesha*, 2022 WI 57, ¶3, 403 Wis. 2d 1, 976 N.W.2d 263. We discuss what it means to "obtain a judicially sanctioned change in the parties' legal relationship" later in this opinion.

***Cnty. Sheriff's Dep't***, 2008 WI App 30, ¶8, 308 Wis. 2d 357, 746 N.W.2d 525; brackets in ***Blazel***).

¶5      MEA filed a motion for relief from judgment or, alternatively, reconsideration of the circuit court's summary judgment order (the "postjudgment motion").  MEA argued that, under ***Blazel***, Prehn had not mooted the case by voluntarily producing the requested records in the course of litigation, and extraordinary circumstances existed justifying relief from judgment.  The circuit court denied MEA's motion, concluding that MEA had not shown extraordinary circumstances justifying relief under WIS. STAT. § 806.07(1)(h) and calling into question ***Blazel***'s interpretation of ***Friends of Frame Park*** and ***Blazel***'s conclusion that voluntary disclosure of a requested record does not render a public records action moot.

¶6      MEA appeals the circuit court's order denying its postjudgment motion.  Prehn cross-appeals, seeking review of the circuit court's non-final order denying his motion to dismiss as well as certain findings that the circuit court made in its summary judgment order.  MEA argued that Prehn's cross-appeal was untimely.

¶7      We conclude as follows: (1) Prehn's cross-appeal is timely; (2) Prehn is not aggrieved by the circuit court's order granting summary judgment in his favor, so he cannot cross-appeal that order; (3) the circuit court correctly denied Prehn's motion to dismiss because the requested communications are "records," and although Prehn is not an "authority" under the Public Records Law, he is a necessary party to this litigation under WIS. STAT. § 803.03(1); (4) the circuit court erroneously exercised its discretion when it denied MEA's postjudgment motion because it based its decision on a manifest error of law;

(5) extraordinary circumstances exist in this case justifying relief from judgment under WIS. STAT. § 806.07(1)(h); and (6) MEA achieved a judicially sanctioned change in the parties' legal relationship.

¶8      Accordingly, we affirm the circuit court's nonfinal order denying Prehn's motion to dismiss, but we reverse the circuit court's final order denying MEA's postjudgment motion.  We remand the cause for further proceedings consistent with this opinion.

## BACKGROUND

¶9      In May 2015, Governor Scott Walker nominated Prehn to the NRB. *State ex rel. Kaul v. Prehn*, 2022 WI 50, ¶5, 402 Wis. 2d 539, 976 N.W.2d 821. Prehn was confirmed by the senate in November 2015, with a term to expire on May 1, 2021." *Id.*  On May 1, 2021, Prehn's term on the NRB expired, but Prehn refused to vacate his seat.[3]  Seeking to learn more about the situation, MEA submitted a written public records request for Prehn's communications regarding his tenure on the NRB.  On June 29, 2021, MEA requested:

> All communications sent to or from Dr. Frederick Prehn, between the dates of June 29, 2020 and June 29, 2021, regarding his tenure on the [NRB], including but not limited to any communication about remaining on the [NRB] past the expiration of his term or otherwise declining to vacate his position on the [NRB].

---

[3] On August 17, 2021, the State filed a lawsuit arguing that Prehn was unlawfully holding his office. *State ex rel. Kaul v. Prehn*, 2022 WI 50, ¶7, 402 Wis. 2d 539, 976 N.W.2d 821.  The case eventually arrived at the Wisconsin Supreme Court, which concluded that the expiration of Prehn's term did not create a vacancy, and therefore, Prehn lawfully retained his office as a holdover. *Id.*, ¶16.

The request defined "communications" to include, among other things, text messages sent or received on any professional or personal device (e.g., cell phones).

¶10    On August 13, 2021, the DNR responded to MEA's request. The response included two hyperlinks to batches of responsive records and an explanation of any records that were redacted or withheld. Neither batch of records included any text messages, and the DNR did not mention text messages in its explanation of records that were redacted or withheld. In a subsequent email to the DNR, MEA reiterated that it had requested text messages but that none were provided in response to the request. A DNR employee, acting as a liaison between the DNR and the NRB, emailed Prehn a copy of the record request and confirmed with him that "text message searches were included in [the] request." Prehn responded, "I have no text on my phone for that." On September 3, 2021, the DNR responded to MEA, stating "that [the relevant staff] did search for text messages as part of their record searches and they did not locate any text message records responsive to your request."

¶11    On September 13, 2021, MEA submitted another public records request not at issue in this lawsuit seeking "all text messages [NRB] Member Bill Smith sent to or received from Dr. Frederick Prehn, between April 1, 2021 and September 13, 2021." In response to that request, the DNR produced an April 26, 2021 text message from Prehn to Smith, stating:

> I've got to decide if I'm going to stay on until the next appointee is confirmed. [Governor] Evers notified me he's not going to reappoint me I guess he thinks there's some pretty big agenda items I might not agree with LOL

6

The discovery of this text message prompted MEA to file the instant lawsuit against Prehn, the DNR, and the NRB.

¶12 On October 19, 2021, MEA filed a complaint alleging that Prehn, through the DNR, and as Chair and Member of the NRB, violated the Public Records Law by failing to fulfill MEA's June 29, 2021 records request as evidenced by responsive records discovered through MEA's September 13, 2021 records request to Smith. MEA additionally alleged that Prehn arbitrarily and capriciously delayed and denied MEA's June 29, 2021 records request. The complaint sought: (1) a mandamus order compelling the Defendants to "immediately search for and produce all records" responsive to MEA's June 29, 2021 records request, including, but not limited to, text messages; (2) reasonable attorneys' fees and actual costs to MEA related to the public records action, and damages of "not less than $100" pursuant to WIS. STAT. § 19.37(2); and (3) punitive damages awarded under § 19.37(3).

¶13 In response, Prehn filed a combined answer and motion to dismiss based on failure to state a claim upon which relief may be granted, arguing that he was not an "authority" under the Public Records Law. Prehn later amended his motion to add the argument that the communications requested were not "records" under the Public Records Law. The DNR and the NRB answered the complaint, but they did not join Prehn's motion to dismiss. They took no position on the "authority" issue, and they disagreed with Prehn on the "records" issue. Indeed, the DNR and the NRB took the position that MEA "has requested records which must be produced." The circuit court denied Prehn's motion on March 8, 2022. The order stated that the decision was final for purposes of appeal, but the circuit court subsequently amended its order on March 28, 2022, to remove that statement.

7

¶14     After the circuit court's decision denying Prehn's motion to dismiss, the parties agreed on the Protocol that included procedures for identifying responsive documents and a schedule for review and production of responsive records. The circuit court included those procedures and schedules in a scheduling order, and it directed that responsive records be produced by September 2, 2022. Subsequently, MEA received a batch of 159 communications, all of which were responsive to MEA's initial public records request.

¶15     On September 23, 2022, MEA and Prehn moved for summary judgment. The DNR and the NRB did not move for summary judgment, but they did request summary judgment in their response brief opposing MEA's motion. On February 14, 2023, the circuit court denied MEA's motion and granted summary judgment to Prehn, the DNR, and the NRB. It concluded that Prehn's initial denial of MEA's request, "followed with an egregious delay, were both arbitrary[.]" However, relying on *Friends of Frame Park*, the circuit court believed it could not award MEA summary judgment. Instead, it concluded that "although [Prehn] arbitrarily withheld public records for approximately [16] months, Prehn has mooted this action by providing those records before any judicially sanctioned change in the parties' relationship."[4]

¶16     On March 9, 2023, we issued *Wisconsin State Journal v. Blazel*, an opinion that was ultimately published and became binding authority in future cases. In *Blazel*, we closely examined *Friends of Frame Park*, and we stated that

---

[4] Independent of the mootness issue, the circuit court concluded that MEA was not entitled to summary judgment against the DNR or the NRB because MEA addressed only Prehn's individual failures in its motion. The conclusion that Prehn's conduct can be separated from the conduct of the DNR and the NRB should be reconsidered in light of this opinion.

"no majority of justices ruled that voluntary release of requested records in the course of litigation of a public records action renders the action moot." ***Blazel***, 407 Wis. 2d 472, ¶¶27-38. We further reiterated that under existing precedent, "the voluntary disclosure of a requested record does not render the action moot because a ruling on the merits will have the practical effect of determining the requester's right to recover damages and fees under WIS. STAT. § 19.37(2)(a) based upon the custodian's denial of its request." ***Blazel***, 407 Wis. 2d 472, ¶43 (cleaned up).

¶17 On March 24, 2023, MEA filed the postjudgment motion underlying this appeal. It argued that under ***Blazel***, the production of responsive records did not render MEA's action moot, and extraordinary circumstances existed justifying relief from judgment.

¶18 On June 30, 2023, the circuit court denied MEA's motion. It concluded that MEA had not shown extraordinary circumstances justifying relief under WIS. STAT. § 806.07(1)(h). In a lengthy footnote, the circuit court called into question ***Blazel***'s interpretation of ***Friends of Frame Park*** and its conclusion that voluntary disclosure of a requested record does not render an action moot.

¶19 On August 11, 2023, MEA appealed from the circuit court's order denying its postjudgment motion. On August 18, 2023, Prehn cross-appealed, seeking: (1) reversal of the circuit court's order denying his motion to dismiss and

(2) modification of certain findings related to Prehn's conduct in the court's order granting the Defendants summary judgment.[5]

## DISCUSSION

¶20    This case involves a direct appeal by MEA and a cross-appeal by Prehn. We first consider Prehn's cross-appeal.[6] We conclude that Prehn timely cross-appealed the circuit court's nonfinal order denying his motion to dismiss and the order granting him summary judgment. However, Prehn was not aggrieved by the order granting him summary judgment, so he cannot cross-appeal that order. We further conclude that the circuit court correctly denied Prehn's motion to dismiss because the requested communications are "records," and although Prehn is not an "authority" under the Public Records Law, he is a necessary party to this litigation under WIS. STAT. § 803.03(1).

¶21    After resolving Prehn's cross-appeal, we turn to MEA's direct appeal. MEA appeals the circuit court's order denying its postjudgment motion. MEA argues that *Blazel* directly contradicts the only basis upon which the circuit court relied when entering the judgment. Given the timing of events, the similarities between MEA and the requester in *Blazel*, and the fact that the circuit court appeared ready to award it summary judgment but for the court's conclusion that the case was moot, extraordinary circumstances exist justifying relief from judgment.

---

[5] Specifically, Prehn challenges the circuit court's findings that he acted arbitrarily and capriciously in denying and delaying production of the responsive text messages that he later produced under the Protocol and the circuit court's scheduling order.

[6] The DNR and the NRB take no position with respect to either the timeliness or merits of Prehn's cross-appeal.

10

¶22 We agree that the circuit court erroneously exercised its discretion and should have granted relief to MEA. Under **Blazel**, MEA's lawsuit is not moot. We further conclude that extraordinary circumstances exist in this case justifying relief from judgment under WIS. STAT. § 806.07(1)(h), the circuit court should have granted MEA's motion for reconsideration, and that MEA has achieved a judicially sanctioned change in the parties' legal relationship.

¶23 Accordingly, we affirm the circuit court's order denying Prehn's motion to dismiss, we reverse the circuit court's order denying MEA's postjudgment motion, and we remand the cause for further proceedings consistent with this opinion.

## I. Prehn's cross-appeal

### A. The cross-appeal was timely.

¶24 MEA argues that Prehn's cross-appeal is untimely under WIS. STAT. § 808.04(1) because Prehn failed to file notice of his cross-appeal within 45 days of the entry of the summary judgment order.[7] Prehn argues that his cross-appeal was timely because it was not governed by the time limits set forth in § 808.04(1). Rather, Prehn filed a cross-appeal under WIS. STAT. RULE 809.10(2)(b), which permits a respondent to cross-appeal "the judgment or order appealed from or of another judgment or order entered in the same action ... within the period established by law for filing a notice of appeal, or 30 days after the filing of a notice of appeal, *whichever is later*." (Emphasis added). Prehn contends that the orders subject to his cross-appeal are other orders entered in the

---

[7] The relevant dates are not in dispute.

same action, and notes that the cross-appeal was filed within 30 days after the filing of MEA's notice of appeal, which is the later of the two deadlines set forth in RULE 809.10(2)(b).

¶25 Ordinarily, a party's failure to timely file a notice of appeal following a final judgment or order precludes a party from seeking review of the underlying proceedings. WIS. STAT. RULE 809.10(1)(e) ("The notice of appeal must be filed within the time specified by law. The filing of a timely notice of appeal is necessary to give the court jurisdiction over the appeal."). Here, the time to directly appeal the circuit court's summary judgment order expired with neither party filing a notice of appeal. However, after the summary judgment final order was entered in the action, MEA filed the postjudgment motion for relief based on a newly issued opinion by this court. When the circuit court denied MEA relief, MEA appealed from that order. Within 30 days of MEA filing its notice of appeal, Prehn cross-appealed the order granting him summary judgment and the nonfinal order denying his motion to dismiss.

¶26 MEA argues that Prehn was required to appeal from these orders, if at all, by the deadline set forth in WIS. STAT. § 808.04(1), and Prehn's failure to do so forever extinguished his ability to seek review of those orders in the future. Prehn argues that such an interpretation would contradict the plain language of WIS. STAT. RULE 809.10(2)(b). He argues that when MEA appealed from the circuit court's order denying its postjudgment motion, he became a respondent and therefore, RULE 809.10(2)(b) unambiguously gives him the opportunity to cross-appeal other judgments or orders entered in the same action within 30 days of MEA's filing of the notice of appeal if the deadlines to directly appeal those orders have expired. Practically speaking, Prehn contends that if the period established by law for the filing of a notice of appeal has expired when the notice of appeal is

12

filed, RULE 809.10(2)(b) resets a respondent's deadline to appeal other judgments or orders entered in that action to 30 days after appellant's filing of the notice of appeal.

¶27　We agree with Prehn. We begin by examining the language of the relevant statutes. *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110. WISCONSIN STAT. § 808.04(1) sets forth the deadline for initiating appeals of final judgments or orders:

> An appeal to the court of appeals must be initiated within 45 days of entry of a final judgment or order appealed from if written notice of the entry of a final judgment or order is given within 21 days of the final judgment or order as provided in [WIS. STAT. §] 806.06(5), or within 90 days of entry if notice is not given, *except as* provided in this section or *otherwise expressly provided by law.*

(Emphasis added). "The notice of appeal must be filed within the time specified by law. The filing of a timely notice of appeal is necessary to give the court jurisdiction over the appeal." WIS. STAT. RULE 809.10(1)(e).

¶28　MEA is correct that after the deadline in WIS. STAT. § 808.04(1) expired, neither it nor Prehn could directly appeal from the summary judgment order or the nonfinal order denying Prehn's motion to dismiss. All deadlines for directly appealing those orders had passed. *See* WIS. STAT. § 808.04(1), WIS. STAT. RULE 809.10(4), 809.50. However, by appealing from the order denying MEA's postjudgment motion, MEA made Prehn a "respondent" under our appellate rules, and the timing of Prehn's cross-appeal became governed by RULE 809.10(2)(b) which allows a respondent to appeal "another judgment or order entered in the same action ... within the period established by law for filing a notice of appeal, or 30 days after the filing of a notice of appeal, whichever is later." *See also* § 808.04(1) (acknowledging that other statutes may expressly

13

provide a different deadline to initiate an appeal). Prehn met this deadline because he filed his cross-appeal within 30 days after MEA's filing of a notice of appeal, the later of the two dates specified in RULE 809.10(2)(b).

¶29 MEA's argument that Prehn was required to bring his cross-appeal within the time period set forth in WIS. STAT. § 808.04(1) ignores critical facts. First, WIS. STAT. RULE 809.10(2)(b) expressly allows a party a minimum of 30 days after the appellant files the notice of appeal to determine whether to file a cross-appeal. RULE 809.10(2)(b), JUDICIAL COUNCIL COMMITTEE'S NOTE (1978) ("The respondent is given a minimum of 30 days after the filing of the notice of appeal to determine whether to file a cross-appeal."). Second, by permitting a respondent time to file a cross-appeal measured from the day the notice of appeal is filed, RULE 809.10(2)(b) prevents appellants from strategically limiting the time period for respondents to decide whether to cross-appeal the order from which appellant appealed or "another judgment or order entered in the same action." If MEA's position were correct, a party aggrieved by a final order could wait until the day before the § 808.04(1) appeal deadline passed to file a notice of appeal, leaving one day for the respondent to decide whether to file a cross-appeal.

¶30 MEA's interpretation would likewise nullify respondents' ability to cross-appeal nonfinal orders after an appeal is taken from a final order, something a respondent can unquestionably do. *State v. Alles*, 106 Wis. 2d 368, 388, 316 N.W.2d 378 (1982) ("Once the appellant has been granted an appeal ... the respondent who was formerly required to bring a notice of review may now utilize the cross-appeal procedure and have nonfinal orders reviewed."); *see also* *Johnson v. Pearson Agri-Systems, Inc.*, 119 Wis. 2d 766, 782-83, 350 N.W.2d 127 (1984).

¶31     There is no right to appeal from nonfinal orders under WIS. STAT. § 808.03(1).  A party that wants to challenge a nonfinal order must instead petition this court for leave to appeal within 14 days after the entry of the nonfinal judgment or order under § 808.03(2) and WIS. STAT. RULE 809.50.  Litigation takes time, so it will very often be the case that the 14-day deadline for permissive appeals of nonfinal orders will have expired by the time a final order is entered months, or even years later.  It cannot be the case that a respondent's ability to timely cross-appeal a nonfinal order depends upon whether a final order was both entered and appealed within 14 days of the nonfinal order the respondent seeks to cross-appeal.[8]

¶32     In short, MEA's argument is contrary to the plain language of WIS. STAT. RULE 809.10(2)(b) because it ignores the statutory provision that allows respondents at least 30 days to file a cross-appeal from "another judgment or order entered in the same action."  Therefore, Prehn's cross-appeal is timely.

¶33     MEA, relying on *State v. Newman*, 162 Wis. 2d 41, 469 N.W.2d 394 (1991), nevertheless argues that if we conclude Prehn's cross-appeal is timely, we would be granting him more rights as a cross-appellant than he would have had as an appellant.  MEA misreads *Newman*.

¶34     The court in *Newman* examined, among other statutes, WIS. STAT. RULE 809.10(2)(b), and reaffirmed that under the cross-appeal statute, "a 'cross-

---

[8] Under WIS. STAT. RULE 809.10(4), "[a]n appeal from a final judgment or final order brings before the court all prior nonfinal judgments, orders and rulings adverse to the appellant and favorable to the respondent made in the action or proceeding not previously appealed and ruled upon[,]" but nonfinal judgements, orders, and rulings *adverse to the respondent and favorable to the appellant* are not included, which is why it is necessary for a respondent to file a cross-appeal if they intend to challenge such judgments, orders, or rulings.

appellant has the same rights and obligations as an appellant' under chapter 809."[9] *Newman*, 162 Wis. 2d at 48 (quoting RULE 809.10(2)(b)). However, the issue in *Newman* did not involve the deadlines in RULE 809.10(2)(b), but was instead about whether the State could cross-appeal a circuit court's order finding that a criminal defendant was not guilty of two counts in an information and dismissing those counts. *Newman*, 162 Wis. 2d at 44. The court explained that the cross-appeal statute allows respondents to cross-appeal orders that the law permits them to appeal. *Id.* at 48. It then examined WIS. STAT. § 974.05(1), which sets forth the limited categories of judgments and orders from which the State may appeal in a criminal case, found that the statute did not expressly authorize the State to appeal an order of acquittal or dismissal of a count after a finding of not guilty, and concluded that the court of appeals had correctly dismissed the State's cross-appeal. *Newman*, 162 Wis. 2d at 49-51; *see also* **State v. McAdory**, 2025 WI 30, ¶¶22-23, __ Wis. 2d __, __ N.W.3d __. Thus, the court in *Newman* concluded that RULE 809.10(2)(b) does not allow a respondent to cross-appeal judgments or orders that the respondent would not have had a legal right to appeal under *any* timeframe.

¶35    MEA claims that if respondents are able to cross-appeal both final and nonfinal orders within 30 days of the appellant filing a notice of appeal of a postjudgment order, parties will be incentivized to bring postjudgment motions for

---

[9] After acknowledging that appellants and cross-appellants have the same rights and obligations as one another, MEA suggests that cross-appellants have only a "limited right" to "seek a modification of" a judgment or order entered in the same action. MEA does not explain how this language limits cross-appellants' rights as compared to appellants, but in our view, MEA's argument is incompatible with the statute's pronouncement that cross-appellants and appellants share the same rights and obligations. *See* WIS. STAT. RULE 809.10(2)(b).

reconsideration for the purpose of refreshing appeal deadlines on long-settled final judgments. MEA's parade of hypothetical horribles is unlikely to materialize.

¶36 First, it is well-settled that a party cannot use a motion for reconsideration as a vehicle for enlarging that party's appeal deadline of a final judgment or order. *See* WIS. STAT. RULE 809.82(2)(b) ("[T]he time for filing a notice of appeal or cross-appeal of a final judgment or order ... may not be enlarged."). "The rule is that, if a party failed to timely appeal the judgment, the party cannot revive its expired deadline by appealing an order that denied a motion for reconsideration that presented the same issues as those determined in the judgment sought to be reconsidered." *Kraemer v. Traun*, 2025 WI App 8, ¶13, 415 Wis. 2d 125, 17 N.W.3d 49. Here, Prehn was not the party that brought the motion for reconsideration. The fear that a party will successfully use a postjudgment motion for reconsideration to revive its expired appeal deadline is nonexistent because a cross-appeal can only ever be brought after a notice of direct appeal. It will never be the case that the respondent refreshes their own deadline—it is the appellant's filing of a notice of appeal that triggers WIS. STAT. RULE 809.10(2)(b).

¶37 Second, and importantly, respondents are limited in what judgments and orders they may cross-appeal to the same extent as an appellant except that the timing of a cross-appeal is governed by WIS. STAT. RULE 809.10(2)(b). For example, a respondent must be aggrieved by the judgment or order from which the respondent cross-appeals. *Kiser v. Jungbacker*, 2008 WI App 88, ¶12, 312 Wis. 2d 621, 754 N.W.2d 180. Moreover, a respondent cannot appeal from a judgment or order that has been previously appealed and ruled upon. *See* WIS. STAT. RULE 809.10(2)(b) (explaining that cross-appellants have the same rights and obligations as appellants) and 809.10(4) (explaining that appellants cannot

seek review of judgments, orders, and rulings "previously appealed and ruled upon"); *see also* ***Ash Park, LLC v. Alexander & Bishop, Ltd.***, 2014 WI App 87, ¶19, 356 Wis. 2d 249, 853 N.W.2d 618 ("The law of the case doctrine is a 'longstanding rule that a decision on a legal issue by an appellate court establishes the law of the case, which must be followed in all subsequent proceedings in the trial court or on later appeal.'" (Citation omitted).).

¶38    As we have explained, the timing of Prehn's cross-appeal was governed by WIS. STAT. RULE 809.10(2)(b).    Under RULE 809.10(2)(b), Prehn could cross-appeal "another judgment or order entered in the same action," and the orders from which Prehn cross-appealed are other judgments or orders entered in this action.    Prehn was required to initiate his cross-appeal "within the period established by law for the filing of a notice of appeal, or 30 days after the filing of a notice of appeal, whichever is later." ***Id.***    Here, because the "period established by law for the filing of a notice of appeal" of the cross-appealed orders had long expired, the applicable deadline for appealing those orders became 30 days after MEA filed its notice of appeal.    MEA filed the notice of appeal of the circuit court's order denying the postjudgment motion on August 11, 2023, and Prehn

filed his cross-appeal on August 18, 2023. Thus, Prehn's cross-appeal was timely filed under RULE 809.10(2)(b).[10]

### B. Prehn was not aggrieved by the circuit court's order granting him summary judgment, so he may not cross-appeal that order.

¶39 Having concluded that Prehn's cross-appeal is timely, we turn to whether he was aggrieved by the circuit court's summary judgment order because if he was not aggrieved by that order, he cannot appeal it even if the cross-appeal was timely. As a strange consequence of the parties' arguments related to the timeliness of the cross-appeal, Prehn argues that he was not aggrieved by the summary judgment order, while MEA argues that he was.[11] We conclude that Prehn was not aggrieved by the circuit court's summary judgment order.

¶40 A party must be aggrieved by the judgment or order from which the party appeals. *Kiser*, 312 Wis. 2d 621, ¶12. "A person is aggrieved if the

---

[10] We observe that the cross-appeal statute offers far fewer options to respondents when the appellant petitions for, and this court grants, permissive leave to appeal under WIS. STAT. § 808.03(2) and WIS. STAT. RULE 809.50. *Fedders v. American Fam. Mut. Ins. Co.*, 230 Wis. 2d 577, 583-85, 601 N.W.2d 861 (Ct. App. 1999). In *Fedders*, we acknowledged the general principle that "[o]nce the appellant has been granted an appeal, either on the basis of right *or in the court's discretion*, the respondent who was formerly required to bring a notice of review may now utilize the cross-appeal procedure and have nonfinal orders reviewed." *Id.* at 584 (quoting *State v. Alles*, 106 Wis. 2d 368, 388, 316 N.W.2d 378 (1982); emphasis added). However, we concluded that "[t]he reference to an appeal in the court's discretion refers to the supreme court's discretion to grant a petition for review" and did not limit our discretion to decide whether to grant review of nonfinal orders under § 808.03(2) and RULE 809.50. *Fedders*, 230 Wis. 2d at 584. Although the order granting leave to appeal has the effect of the filing of a notice of appeal under RULE 809.50(3), we concluded that allowing respondents to cross-appeal "unrelated interlocutory orders" would "severely hamper[]" our discretion to grant leave to appeal only those interlocutory orders that satisfy the criteria in § 808.03(2). *Fedders*, 230 Wis. 2d at 583-84.

[11] MEA argued that Prehn was aggrieved by the summary judgment order, and therefore, his appeal from that order was required to be noticed under the deadline established for direct appeals of final orders. Prehn, on the other hand, argued that he was not aggrieved by the summary judgment order, and therefore, he could not have been required to cross-appeal that order under the deadline established for direct appeals.

judgment or order bears 'directly and injuriously' upon his or her interests and affects the person 'in some appreciable manner.'" ***Id.***, ¶11 (quoting ***Weina v. Atlantic Mut. Ins. Co.***, 177 Wis. 2d 341, 345, 501 N.W.2d 465 (Ct. App. 1993)).

¶41 Although a party may appeal portions of judgments that are adverse to its interests even when that party prevailed overall, the portions appealed from must actually affect the party in some appreciable manner. For example, in ***Lassa v. Rongstad***, 2006 WI 105, ¶¶26-29, 294 Wis. 2d 187, 718 N.W.2d 673, a defendant in a defamation action appealed from a judgment entered upon a settlement agreement that dismissed the claims against the defendant with prejudice, but required him to pay $65,000 in discovery sanctions. In ***Edlin v. Soderstrom***, 83 Wis. 2d 58, 61-64, 264 N.W.2d 275 (1978), which was decided under former WIS. STAT. ch. 817 and not under the current rules of appellate procedure, the plaintiff appealed from a final judgment that denied her specific performance of a real estate contract even though it granted all other relief she requested.

¶42 If the portion of the judgment appealed from in ***Lassa*** was enforced, the appellant would owe $65,000 to the respondent. If the portion of the judgment appealed from in ***Edlin*** was enforced, the appellant would not get the specific remedy she requested in her complaint. In this case, however, the circuit court granted summary judgment to Prehn without qualification. In other words, unlike the judgments in ***Lassa*** and ***Edlin***, no part of the summary judgment order could be enforced against Prehn to his detriment. The summary judgment order, even the specific findings Prehn challenges, do not affect him in any appreciable manner. Accordingly, because Prehn is not aggrieved by the circuit court's summary judgment order, he may not cross-appeal that order.

### C. The circuit court correctly denied Prehn's motion to dismiss.

¶43 We now turn to Prehn's cross-appeal of the circuit court's order denying his motion to dismiss for failure to state a claim, wherein he argued that the communications requested were not "records" under WIS. STAT. § 19.32(2) and that he was not an "authority" pursuant to § 19.32(1). No party disputes that Prehn was aggrieved by this order, and we observe that a ruling in Prehn's favor would have an immediate, direct effect on the merits of MEA's direct appeal (e.g., MEA's direct appeal would fail if the requested communications were not "records" under the Public Records Law).

¶44 "Whether a complaint states a claim upon which relief can be granted is a question of law for our independent review[.]" *Data Key Partners v. Permira Advisers LLC*, 2014 WI 86, ¶17, 356 Wis. 2d 665, 849 N.W.2d 693. "When we review a motion to dismiss, factual allegations in the complaint are accepted as true for the purposes of our review." *Id.*, ¶18. In our review here, we must determine if the communications sought in MEA's request were "records" and if Prehn was an "authority" under the Public Records Law. These are questions of statutory interpretation that we review independently. *Nowell v. City of Wausau*, 2013 WI 88, ¶19, 351 Wis. 2d 1, 838 N.W.2d 852.

¶45 Before we begin our analysis, we highlight the explicit public policies underlying the Public Records Law. The legislature declared in the Public Records Law that "[e]xcept as otherwise provided by law, any requester has a right to inspect any record." WIS. STAT. § 19.35(1)(a). "[I]t is ... the public policy of this state that all persons are entitled to the greatest possible information regarding the affairs of government and the official acts of those officers and employees who represent them." WIS. STAT. § 19.31. In light of this policy, the

21

legislature has stated that the Public Records Law "shall be construed in every instance with a presumption of complete public access, consistent with the conduct of governmental business. The denial of public access generally is contrary to the public interest, and only in an exceptional case may access be denied." *Id.*

### 1. The requested communications are "records."

¶46    Prehn contends that the unproduced text messages that were later produced pursuant to the Protocol and scheduling order were not "records" under the Public Records Law, and therefore neither he (nor the NRB or the DNR) were required to disclose them. MEA's public records request sought "[a]ll communications" sent to or from Prehn "regarding his tenure on the [NRB], including but not limited to any communication about remaining on the board past the expiration of his term or otherwise declining to vacate his position on the [NRB]." In Prehn's view, the statutory definition of "record" does not include communications reflecting his "purely personal" decision about whether to remain in office past the expiration of his term like the text messages at issue.

¶47    We conclude that the unproduced text messages sought in MEA's request are "records" under the Public Records Law. We begin with the language of the statute. *Kalal*, 271 Wis. 2d 633, ¶45. "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." *Id.* Moreover, "statutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Id.*, ¶46.

22

¶48   The term "record" is broadly defined under the Public Records Law. A "record" is, in relevant part, "any material on which written ... or electromagnetic information or electronically generated or stored data is recorded or preserved, regardless of physical form or characteristics, that has been created or is being kept by an authority[,]" except that a "record" does not include "materials that are purely the personal property of the custodian and have no relation to his or her office[.]"  WIS. STAT. § 19.32(2).

¶49   On its face, MEA's request seeks "records" under the Public Records Law.  The nature of a communication determines whether it is a "record" under the Public Records Law, and communications that have a "connection to a government function" are "records" under the Public Records Law.  *John K. MacIver Inst. for Pub. Policy, Inc. v. Erpenbach*, 2014 WI App 49, ¶18, 354 Wis. 2d 61, 848 N.W.2d 862; *see also Nichols v. Bennett*, 199 Wis. 2d 268, 274-75, 544 N.W.2d 428 (1996) ("It is the nature of the documents and not their location which determines their status under [WIS. STAT.] §§ 19.31 to 19.37."). Communications relating to, among other things, the affairs of government and the official acts of public officers and employees are "records" under the Public Records Law.  Sec. 19.31.  MEA's request sought records with a connection to a government function and Prehn's office.   The request specifically asked for communications relating to Prehn's intentions to remain in office by exercising a power of that office to retain it as a holdover until a replacement was appointed by the governor and confirmed by the senate.  The argument that these unproduced text messages lack a "connection to a government function" or are unrelated to "the affairs of government" is contrary to their plain content.  *See John K. MacIver Inst.*, 354 Wis. 2d 61, ¶18.

23

¶50 Prehn argues that because MEA's request sought records about his decision to vacate or remain in his seat, we should construe the request as seeking records of a "purely personal" decision. Prehn likens his situation to that of an elected official's decision whether to seek reelection.

¶51 We reject Prehn's argument that the records are "purely personal" and that his situation is analogous to that of an elected official contemplating whether to seek reelection. First, WIS. STAT. § 19.32(2) says that a communication is not a "record" if it is "purely the personal property of the custodian and [has] *no relation to his or her office*[.]" (Emphasis added). As we explained above, the communications sought by MEA were about whether a power inherent to the office would be exercised, and the communications were directly connected to the functions of government. Even Prehn admits in his brief on appeal that "the decision to remain on the NRB had *some* connection to the NRB."

¶52 Second, Prehn's situation is simply not analogous to an elected official's decision whether to seek reelection. An elected official does not have the option to simply stay in office past the expiration of his or her term. Here, however, Prehn's power to holdover past the expiration of his term is derived entirely from the office he held. *See generally **Kaul***, 402 Wis. 2d 539. Put another way, the government office Prehn held granted him the power to stay in his seat past the expiration of his term until a replacement was appointed by the governor and confirmed by the senate, and MEA sought records directly related to Prehn's decision to exercise that power. Prehn's decision to remain in his seat past the expiration of his term cannot be considered a "purely personal" decision that had "no relation" to his office where the decision itself is whether to exercise a power of that office. Accordingly, we conclude that the communications

requested by MEA were not "purely personal" and were instead "records" under the Public Records Law.

> **2.  Prehn is not an "authority," but under the circumstances of the instant case, he is a necessary party under WIS. STAT. § 803.03(1).**

¶53    Prehn also argues that he is not an "authority" under the Public Records Law.  Whether Prehn is an "authority" is significant and relevant to the issue of who would be liable to MEA if it were awarded costs, reasonable attorney fees, statutory damages, and punitive damages under WIS. STAT. § 19.37.[12]

¶54    Once again we begin with the statutory language.  *See **Kalal***, 271 Wis. 2d 633, ¶45.  The definition of "authority" as set forth in WIS. STAT. § 19.32(1) reads:

> "Authority" means any of the following having custody of a record: a state or local office, elective official, agency, board, commission, committee, council, department or public body corporate and politic created by the constitution or by any law, ordinance, rule or order; a governmental or quasi-governmental corporation except for the Bradley center sports and entertainment corporation; a special purpose district; any court of law; the assembly or senate; a nonprofit corporation which receives more than 50 percent of its funds from a county or a municipality, as defined in [WIS. STAT. §] 59.001(3), and which provides services related to public health or safety to the county or municipality; a university police department under [WIS. STAT. §] 175.42; or a formally constituted subunit of any of the foregoing.

---

[12] WISCONSIN STAT. § 19.37(2)(a) specifies that "reasonable attorney fees, damages of not less than $100, and other actual costs to the requester" may be awarded, and "[c]osts and fees shall be paid by the authority affected or the unit of government of which it is a part, or by the unit of government by which the legal custodian under [§] 19.33 is employed and may not become a personal liability of any public official."  Section 19.37(3) says that "an authority or legal custodian" may be liable for punitive damages if it "arbitrarily and capriciously denied or delayed" a response to a record request.

There is no dispute that the NRB (a "board") and the DNR (a "department") are both "authorities" under the Public Records Law. The parties' arguments revolve around whether a "state office" includes the individuals that hold that office, such that Prehn is individually an "authority" under the law because he is a member of an authority (specifically, Chair and Member of the NRB).

¶55 In short, Prehn claims that the only category of individuals (i.e., natural, living persons) listed in the statutory definition of "authority" is "elective official," while all the rest are entities. According to Prehn, he is an individual and not an "elective official," so he is not an "authority," although the DNR and the NRB are both "authorities." MEA argues that Prehn is an "authority" because Prehn holds a state office, and individuals who occupy a state office cannot, in an official capacity, be divorced from the office itself under the Public Records Law. MEA further argues that if Prehn is not an "authority" under the Public Records Law, he is nonetheless a necessary party to the litigation under WIS. STAT. § 803.03(1) because Prehn had exclusive custody of responsive records, and MEA could not obtain complete relief in his absence.

¶56 We agree with Prehn that he is not an "authority" under the Public Records Law. However, we also agree with MEA that, under the circumstances of this case, Prehn is a necessary party under WIS. STAT. § 803.03(1). Therefore, although Prehn is not an "authority," we nonetheless affirm the circuit court's order denying Prehn's motion to dismiss. *See State v. Earl*, 2009 WI App 99, ¶18 n.8, 320 Wis. 2d 639, 770 N.W.2d 755 ("On appeal, we may affirm on different grounds than those relied on by the trial court.").

¶57 MEA contends, and the circuit court agreed, that a "state office" in the statutory definition of "authority" includes the individual that holds the state

office. The term "state office" is not defined in the Public Records Law. However, a term closely-related in both proximity and substance, "state public office," is defined in WIS. STAT. § 19.32(4) as having "the meaning given in [WIS. STAT. §] 19.42(13), but does not include a position identified in [WIS. STAT. §] 20.923(6)(f) to (gm)."[13]  *See* **Kalal**, 271 Wis. 2d 633, ¶46 (explaining that statutory language should be interpreted "in relation to the language of surrounding or closely-related statutes").  Section 19.42(13), in turn, lists a variety of "positions" that are considered "state public offices," including "[a]ll positions to which individuals are regularly appointed by the governor[.]"  MEA says that because Prehn was appointed to his position by Governor Walker, he holds a "state public office," and is therefore an "authority."

¶58    We cannot agree with MEA.  We need not resolve whether the term "state office" in WIS. STAT. § 19.32(1)'s definition of "authority" has the same meaning as "state public office" in § 19.32(4).  Even if they have the same meaning, the definition of "state public office" does not support MEA's argument that the *individual* that holds a "state public office" is an "authority" under the Public Records Law.  WIS. STAT. § 19.42(13)'s definition of "state public office" includes a wide variety of governmental "positions," and it specifically differentiates between the "position" itself and the "individual" that holds the "position."  *See, e.g.*, § 19.42(13)(a) (including as a "state public office" "[a]ll *positions* to which *individuals* are regularly appointed"); LAW REVISION COMMITTEE NOTE, 1983, § 19.42 ("'Individual,' although not specifically defined

---

[13] The specific positions listed in WIS. STAT. § 20.923(6)(f)-(gm) are not relevant to this appeal except to the extent they identify *positions* in government, as opposed to the individuals that hold those positions.

in the current statutes or in this bill, is used consistently in this bill to refer to natural persons."). In this respect, the definition of "state public office" actually supports Prehn's position that "state office" refers to the *office* (i.e., the *position*) and not the individual public official that holds the office.

¶59 Moreover, as Prehn highlights, other parts of the Public Records Law do not make sense if we adopt MEA's interpretation of "state office." For example, MEA's interpretation of "state office" as including individual members of an authority does not comport with the sections of the Public Records Law governing how legal custodians are designated for authorities like the NRB.

¶60 Those relevant sections, WIS. STAT. § 19.33(4)-(5), govern the designation of a legal custodian for authorities like the NRB. Section 19.33(4) reads, in relevant part: "Every authority not specified in [§ 19.33](1) to (3) shall designate in writing one or more positions occupied by an officer or employee of the authority or the unit of government of which it is a part as a legal custodian to fulfill its duties under this subchapter."[14]

¶61 WIS. STAT. § 19.33(5) reads:

> Notwithstanding [§ 19.33](4), if an authority specified in [§ 19.33](4) *or the members of such an authority* are appointed by another authority, the appointing authority may designate a legal custodian for records of the authority or members of the authority appointed by the appointing authority, except that if such an authority is attached for administrative purposes to another authority, the authority performing administrative duties shall designate the legal custodian for the authority for whom administrative duties are performed.

---

[14] WISCONSIN STAT. §§ 19.33(1)-(3) govern the designation of legal custodians for elective officials, legislative committees, and joint committees.

Sec. 19.33(5) (emphasis added).

¶62   WISCONSIN STAT. § 19.33(5) perfectly describes the relationship between the relevant governmental actors in this litigation, and parts of this subsection would lose meaning under MEA's interpretation of "authority" as including individual members of the NRB.  Neither the NRB nor the DNR are authorities "specified in [§19.33](1) to (3)," and members of the NRB, like Prehn, are appointed by another authority, i.e., the governor.  If "state office" had the same meaning as "state public office," and individuals who hold a "state public office" were "authorities," as MEA suggests, there would be no need to differentiate between "authorities" and "members of authorities" appointed by another authority in § 19.33(5).  All members of an authority appointed by another authority would also be "authorities" themselves because every one of those appointed members would hold a "state office."  Put another way, MEA's interpretation would eliminate the distinction between authorities and appointed members of those authorities that is plainly set forth in the language of § 19.33(5).

¶63   MEA argues that *Moustakis v. DOJ*, 2016 WI 42, 368 Wis. 2d 677, 880 N.W.2d 142, supports its argument that "an individual who occupies a state office cannot, in an official capacity, be divorced from the office itself" under the Public Records Law.  The circuit court similarly relied on *Moustakis* for this conclusion in its order denying Prehn's motion to dismiss.  However, in our view, both MEA and the circuit court read too much into *Moustakis*.  In *Moustakis*, an elected county district attorney sued the Wisconsin Department of Justice to block the release of records about him, claiming that he was an "employee" of an "authority" entitled to notice and pre-release judicial review under WIS. STAT. § 19.356(4).  *Moustakis*, 368 Wis. 2d 677, ¶¶2-3.  The *Moustakis* court did not analyze, conclude, or even imply that all individuals who hold a "state office" are

29

"authorities" under the Public Records Law. Having been elected to the position of district attorney, Moustakis was indisputably an "elective official," and therefore, an "authority" under the Public Records Law. *Id.*, ¶43.

¶64    MEA says that the *Moustakis* court held that a district attorney qualified as both an "elective official" and a "state office" as those terms are used in the Public Records Law. *See id.* This is true, but it does not help MEA. *The position* of district attorney is a "state office." *An individual* who is elected to the position of district attorney is also an "elective official," and therefore, that person is individually an "authority" under the Public Records Law. The *Moustakis* court did not say that *any* individual holder of "state office," elected or appointed, is an "authority" because they hold a "state office." In short, *Moustakis* is not helpful in resolving the issue presented in this case. Accordingly, we conclude that while the NRB is an "authority" under the Public Records Law, its individual members, including Prehn, are not.

### 3. Prehn is a necessary party under WIS. STAT. § 803.03(1).

¶65    Although we conclude that Prehn is not an "authority" under the Public Records Law, we note that Prehn concedes that he is a public official and that, as a public official, he had statutory duties to preserve records. *See* WIS. STAT. § 19.21 (relating to the responsibility of public officials to keep and preserve records and other property of the office). With this obligation in mind, we turn to whether, despite our conclusion that Prehn is not an "authority," Prehn is nonetheless a necessary party to this litigation under WIS. STAT. § 803.03(1). MEA argues on appeal that Prehn is a necessary party under § 803.03(1)(a) because he had exclusive possession and control of the records, and it could not

obtain "complete relief" without Prehn being a party to the case.[15] MEA says that the DNR and the NRB could not have complied with a mandamus order requiring them to immediately search for and produce responsive records other than requesting (again) that Prehn do so. For his part, Prehn responded to this argument when it was raised in the circuit court, but he does not address this argument on appeal. We agree with MEA that Prehn is a necessary party under § 803.03, and therefore, the circuit court properly denied Prehn's motion to dismiss.

¶66 A party can be deemed necessary under WIS. STAT. § 803.03 for any one of three reasons set forth in § 803.03(1). *Koschkee v. Evers*, 2018 WI 82, ¶17, 382 Wis. 2d 666, 913 N.W.2d 878; *Dairyland Greyhound Park, Inc. v. McCallum*, 2002 WI App 259, ¶9, 258 Wis. 2d 210, 655 N.W.2d 474. Two of those reasons are relevant here. Section 803.03(1) specifies that a person "shall be joined as a party" in an action if:

> (a) In the person's absence complete relief cannot be accorded among those already parties; or
>
> (b) The person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may:
>
> > 1. As a practical matter impair or impede the person's ability to protect that interest[.]

¶67 We conclude that, under the facts of the instant case, Prehn is a necessary party under WIS. STAT. § 803.03(1). Here, MEA requested records created by the NRB through one of its members (i.e., Prehn) regarding the exercise

---

[15] In the circuit court, the DNR and the NRB also raised the issue that Prehn is a necessary party to the litigation under the facts of the case.

of a power inherent to that member's office. The DNR produced records responsive to MEA's request, but the production included no text messages. After MEA clarified that the request included text messages, the DNR emailed Prehn to clarify that texts were included in the request, and Prehn responded that he had "no text on [his] phone for that." MEA later discovered through a different public records request that Prehn did, in fact, have texts on his phone responsive to MEA's records request, and litigation ensued.

¶68    From the outset of this litigation, the DNR and the NRB have taken a position adverse to Prehn. In the circuit court, the DNR and the NRB agreed with MEA that the requested communications were "records" under the Public Records Law and must be produced, but the DNR and the NRB could not produce the requested records voluntarily because Prehn had exclusive custody of the requested records.

¶69    Reduced to the most basic level, this case presents a situation in which a person makes a legally valid request for records in the exclusive custody of a member of an authority who refused to relinquish control of the records to the authority, despite requests by the authority that records be turned over, based on the belief that they were not "records" under the Public Records Law. In such a case, we know of no mechanism by which the authority could unilaterally take the records or obtain the records from the member's home or personal devices; the member must turn them over. Therefore, the member of the authority becomes a necessary party under WIS. STAT. § 803.03(1)(a) because the plaintiff requester cannot obtain "complete relief"—the unproduced records—in the absence of the member. Any mandamus order that the circuit court issued could bind only the authority (i.e., the governmental entity), and it would not have the power to force the member, not party to the litigation, to relinquish control of their personal

electronic devices for the purpose of searching for and producing responsive records. By joining the member as a necessary party under § 803.03(1)(a), the member is then under the court's jurisdiction and may be compelled by the court to search for and produce records that are in his or her exclusive possession or control.

¶70 Even if the circuit court, in Prehn's absence, could somehow compel Prehn individually to search for and produce responsive records contained on his personal electronic devices so that "complete relief" could be afforded, Prehn would still be a necessary party under WIS. STAT. § 803.03(1)(b)1. because his absence will, as a practical matter, impair or impede his ability to protect his interest in nondisclosure of the records.

¶71 Our supreme court has explained that, under WIS. STAT. § 803.03(1)(b)1., "[t]he relevant inquiry in Wisconsin is thus not whether a prospective party has a legal or legally protected interest in the subject of an action, but whether the person or entity has an interest of such direct and immediate character that the [prospective party] will either gain or lose by the direct operation of the judgment." *Dairyland Greyhound Park*, 258 Wis. 2d 210, ¶15 (cleaned up). In this case, MEA, the DNR, and the NRB have been in consistent agreement that the records requested by MEA are, in fact, "records" under the Public Records Law and must be produced. Prehn has maintained throughout this litigation that the requested communications *are not* records and are instead "purely personal" records not subject to disclosure under the Public Records Law. If it were the case that "complete relief" could be afforded to MEA in Prehn's absence, it could only mean that a mandamus order issued in his absence would bind him. He "will either gain or lose" custody and control of those communications "by the direct operation of the judgment," and no party in

33

the litigation would advocate on Prehn's behalf that the alleged records were in fact "purely personal" communications unrelated to Prehn's office. *See id.* Thus, whether under § 803.03(1)(a) or § 803.03(1)(b)1., Prehn is a necessary party in this litigation.

¶72    Accordingly, although we conclude that Prehn is not an "authority" under the Public Records Law, we nonetheless affirm the circuit court's denial of Prehn's motion to dismiss.

## II. MEA's direct appeal

### A. The circuit court erroneously exercised its discretion when it denied MEA's WIS. STAT. § 806.07(1)(h) postjudgment motion.

¶73    Having resolved Prehn's cross-appeal, we now turn to MEA's direct appeal of the circuit court's order denying its postjudgment motion for relief from the circuit court's summary judgment order. Prehn argues that no extraordinary circumstances exist justifying relief from judgment. In particular, Prehn says that MEA should have directly appealed the circuit court's summary judgment order to raise the *Blazel* issue instead of moving for relief from judgment or reconsideration.

¶74    Prehn also argues that MEA did not achieve a "judicially sanctioned change in the parties' legal relationship," so it cannot be entitled to costs, fees, or damages. In *Friends of Frame Park*, our supreme court concluded that a requester needs to achieve a "judicially sanctioned change in the parties' legal relationship" before it is entitled to costs, attorney fees, and damages under WIS. STAT. § 19.37(2)(a). "Four justices agree that to 'prevail in whole or in substantial part' [under § 19.37(2)(a)] means the party must obtain a judicially sanctioned change in the parties' legal relationship." *Friends of Frame Park*, 403 Wis. 2d 1,

¶3 (cleaned up). However, **Friends of Frame Park** did not define what it means to "achieve a judicially sanctioned change in the parties' legal relationship." Prehn argues that "the only judicially sanctioned change a requester can achieve in order to substantially prevail under [§] 19.37(1)(a) is a writ of mandamus," which MEA did not obtain. Therefore, MEA did not "achieve a judicially sanctioned change" in its relationship with the Defendants, and its postjudgment motion was properly denied on that basis.[16]

¶75 MEA responds that litigants are encouraged to request reconsideration in the circuit court as a method of correcting errors, and it highlights the fact that the circuit court appeared ready to award it summary judgment only to reluctantly conclude that it could not because, under the circuit court's reading of **Friends of Frame Park**, the case became moot when Prehn voluntarily produced the requested records. Finally, MEA says that the circuit court erroneously exercised its discretion because it misinterpreted **Blazel**, and as a consequence, applied the wrong legal standard.

¶76 We agree with MEA.

### 1. The circuit court based its decision to deny MEA's postjudgment motion on a manifestly incorrect legal standard, and the circuit court should have granted relief.

¶77 We first discuss MEA's argument under WIS. STAT. § 806.07(1)(h) that a good and equitable reason justifies relief from judgement. We begin our

---

[16] On appeal, the DNR and the NRB make similar arguments with respect to **Wisconsin State Journal v. Blazel**, 2023 WI App 18, 407 Wis. 2d 472, 991 N.W.2d 450, the absence of extraordinary circumstances, and whether MEA achieved a judicially sanctioned change in the parties' legal relationship.

analysis by examining the relevant statutory language. *Kalal*, 271 Wis. 2d 633, ¶45. Section 806.07(1) allows courts to relieve a party from a judgment for a variety of reasons. *See Sukala v. Heritage Mut. Ins. Co.*, 2005 WI 83, ¶9, 282 Wis. 2d 46, 698 N.W.2d 610. Section 806.07(1)(h) is a catch-all provision, allowing courts to grant relief from judgment for "[a]ny other reasons justifying relief from the operation of the judgment." "The evident purpose of § 806.07 is to give a court authority to provide relief on equitable grounds … and the catch-all in [§ 806.07(1)](h) shows that the enacting body intended this authority to be broad[.]" *Gittel v. Abram*, 2002 WI App 113, ¶24, 255 Wis. 2d 767, 649 N.W.2d 661.

¶78 WISCONSIN STAT. § 806.07(1)(h) permits a court to grant a party relief from a judgment based on subsequent changes in the law, but only in "unique and extraordinary circumstances." *Sukala*, 282 Wis. 2d 46, ¶12. "Unique and extraordinary circumstances are those where the sanctity of the final judgment is outweighed by the incessant command of the court's conscience that justice be done in light of all the facts." *Id.* (cleaned up). "Courts should not interpret [§ 806.07](1)(h) so broadly as to erode the concept of finality, nor should courts interpret it so narrowly that truly deserving claimants are denied relief." *Id.*

¶79 Whether to grant relief from judgment under WIS. STAT. § 806.07(1)(h) is a discretionary decision. *Sukala*, 282 Wis. 2d 46, ¶8. "A discretionary decision contemplates a process of reasoning that depends on facts that are in the record, or reasonably derived by inference from facts of record, *and a conclusion based on the application of the correct legal standard.*" *Id.* (emphasis added).

¶80    While Prehn asserts that MEA was required to appeal from the summary judgment order to obtain the relief it seeks, we agree with MEA that this position both lacks supporting authority and directly contradicts guidance from our supreme court with respect to how litigants should seek corrections to orders issued by the circuit court. We have explained that the Wisconsin Supreme Court "encourages litigants to request the [circuit] courts for reconsideration as a method of correcting errors." *Harris v. Reivitz*, 142 Wis. 2d 82, 89, 417 N.W.2d 50 (Ct. App. 1987) (citing *Kochel v. Hartford Accident & Indem. Co.*, 66 Wis. 2d 405, 418, 225 N.W.2d 604 (1975)). In addition to a circuit court's inherent authority to reconsider its prior rulings, WIS. STAT. § 806.07(1)(h) is also a vehicle whereby a circuit court can "correct its errors." *Gittel*, 255 Wis. 2d 767, ¶23. It simply is not true that MEA was required, under these facts, to directly appeal the circuit court's summary judgment order to obtain the relief it sought.

¶81    We turn next to Prehn's argument that the circuit court applied reasonable interpretations of *Friends of Frame Park* and what it means to "substantially prevail" under WIS. STAT. § 19.37(2)(a) such that the requester is entitled to costs, attorney fees, and damages. Prehn asserts that these reasonable interpretations constitute the correct legal standard. We disagree.

¶82    WISCONSIN STAT. § 19.37(2)(a) says that the circuit court "shall award reasonable attorney fees, damages of not less than $100, and other actual costs to the requester if the requester prevails in whole or in substantial part in any action filed under [§ 19.37](1) relating to access to a record or part of a record under [WIS. STAT. §] 19.35(1)(a)." *Friends of Frame Park* changed what it means to "prevail" under the statute. When MEA filed this lawsuit, *Friends of*

*Frame Park* had not yet been decided, and the causal nexus test for obtaining fees after voluntary production of records was still the law.[17]

¶83   The supreme court issued *Friends of Frame Park* after the circuit court denied Prehn's motion to dismiss, but before the circuit court issued its scheduling order requiring the search for and disclosure of responsive records. The case was divided 1-3-3, and only the following two sentences garnered a majority of justices: "Four justices agree that 'to prevail in whole or in substantial part' means the party must obtain a judicially sanctioned change in the parties' legal relationship. Accordingly, a majority of the court adopts this principle." *Friends of Frame Park*, 403 Wis. 2d 1, ¶3 (cleaned up); *see also* *Blazel*, 407 Wis. 2d 472, ¶37.

¶84   MEA and Prehn moved for summary judgment after *Friends of Frame Park* was decided, and the circuit court relied on *Friends of Frame Park* in its decision. The circuit court concluded that Prehn had violated the Public Records Law and that he did so arbitrarily, but it ultimately awarded the Defendants summary judgment and dismissed MEA's complaint. The circuit court interpreted *Friends of Frame Park* as having decided that the voluntary disclosure of records mid-litigation by an authority before a judicially sanctioned change in the parties' legal relationship moots a requester's lawsuit. Because Prehn produced all requested records prior to any judicially sanctioned change in

---

[17] Under the causal nexus test, "a party 'prevails' in a public records action if there is a causal nexus between the requester bringing the action and the defendant providing the requested records." *Friends of Frame Park, U.A. v. City of Waukesha*, 2022 WI 57, ¶18, 403 Wis. 2d 1, 976 N.W.2d 263.

the parties' legal relationship, the circuit court concluded that the case was moot and all three Defendants were entitled to summary judgment.

¶85    Approximately three weeks after the circuit court's decision, we issued *Blazel*.  In *Blazel*, after a close examination of *Friends of Frame Park*, we stated that "no majority of justices ruled that voluntary release of requested records in the course of litigation of a public records action renders the action moot."[18]  *Blazel*, 407 Wis. 2d 472, ¶¶27-38.  We further reiterated that under existing precedent, "the voluntary disclosure of a requested record does not render the action moot because a ruling on the merits 'will have the practical effect of determining the [requester's] right to recover damages and fees under WIS. STAT. § 19.37(2)(a) based upon the [custodian's] denial of its request.'"  *Id.*, ¶43 (quoting *Portage Daily Reg.*, 308 Wis. 2d 357, ¶8; brackets in *Blazel*).  We concluded that "a decision on the merits of the [requester's] challenge to the [authority's] initial outright denial of their records requests will have a practical effect on the [requester's] entitlement to attorney fees."  *Blazel*, 407 Wis. 2d 472, ¶43.

¶86    The circuit court's order denying MEA's postjudgment motion did not apply *Blazel*, nor did it attempt to distinguish *Blazel* from the instant case. Instead, the circuit court stated that if *Blazel* did not change the law, then *Blazel* cannot supply the extraordinary circumstances needed for relief under WIS. STAT. § 806.07(1)(h).  If *Blazel* did "change[] the law by 'interpreting and clarifying'

---

[18]    Indeed, the circuit court acknowledged in its summary judgment order that *Friends of Frame Park* did not reach a majority on the mootness issue because Justice Hagedorn, the author of the majority opinion who would have been the deciding vote on the issue, said that he would "reserve this question for another day."  *Friends of Frame Park*, 403 Wis. 2d 1, ¶25; *see also Blazel*, 407 Wis. 2d 472, ¶39.

[***Friends of Frame Park***] and/or WIS. STAT. § 19.37(2)," then MEA failed to explain why extraordinary circumstances existed separate and apart from the fact that "the law changed."

¶87    Additionally, in a lengthy footnote, the circuit court explicitly rejected ***Blazel***'s interpretation of ***Friends of Frame Park***.  It stated:

> It is therefore important—strictly for explaining why [MEA's] new arguments on reply do not warrant further eroding value in finality—to point out that ***Blazel*** may be unsound.  The court of appeals says that, contrary to the holding of [***Friends of Frame Park***]: (1) a demand for fees is never moot because fees have a practical effect, (2) so a party may always seek a fee award, (3) thus bootstrapping the judicially sanctioned change which [***Friends of Frame Park***] requires in the first instance.
>
> I am not alone in observing the illogical result.  As Judge Fitzpatrick pointed out, this "misses a mandated step ... [t]here must first be a ruling about the delay[.]"

We addressed this concern in ***Blazel***, and in any event, the circuit court is bound to apply ***Blazel***'s holdings.[19]

---

[19]  We stated:

> The dissent emphasizes the need in this context for "a grant of judicial remedy or relief concerning the delay in production of the records."  … Here, there was such a grant, in the form of the ruling of the circuit court that the delay was unreasonable.

(continued)

¶88 Circuit courts do not have the authority to disregard binding precedent from this court, no matter how strongly they may disagree with it. *Blazel*'s interpretation of *Friends of Frame Park* is binding, authoritative, and must be followed by both the court of appeals and the circuit courts unless and until our supreme court weighs in on the issue, which to date, it has not. *See Cook v. Cook*, 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997).

¶89 Moreover, MEA made many of the same arguments to the circuit court as it now does on appeal that extraordinary circumstances exist justifying relief from the circuit court's summary judgment order under WIS. STAT. § 806.07(1)(h). We agree with MEA that extraordinary circumstances exist in this situation.

¶90 In this case, the circuit court appeared ready to award MEA summary judgment only to reluctantly conclude that it could not because, under the circuit court's reading of *Friends of Frame Park*, the case became moot when Prehn voluntarily produced the requested records. We find it novel that the

---

> Further we observe that, under the reasoning in the dissent, there would appear to be no chance for a party ever to obtain relief for a claim of delay in the release of requested public records and that no majority of justices in *Friends of Frame Park* endorsed such a rule. In this case, the amended complaint alleged that the Assembly violated the public records law in part by unreasonably delaying before ultimately releasing the requested records. A claim of unreasonable delay can by definition only ever be asserted after the records have been released, after the delay but before a court has had an opportunity to decide such issues as whether the records were required to be released and the circumstances of eventual release. The dissent's approach would have the effect of eliminating unreasonable delay as a cause of action for which relief may be granted.

*Blazel*, 407 Wis. 2d 472, ¶44 n.14.

41

summary judgment order so heavily favored the losing party, with the circuit court explicitly stating that Prehn violated the Public Records Law and did so arbitrarily and capriciously, but it could not award MEA any relief under its misinterpretation of *Friends of Frame Park*. We further observe that both *Friends of Frame Park* and *Blazel* were decided after the lawsuit was filed. As MEA points out, several different rules were in place regarding MEA's right to recover costs and attorney fees while this case was pending before the circuit court.

¶91 Prehn argues that no "extraordinary circumstances" exist because MEA should have directly appealed the summary judgment order, but again, as we explained above, no case, statute, or rule required MEA to directly appeal that order. In fact, our case law encourages MEA to do exactly what it did here: file a motion for relief from judgment or reconsideration to give the circuit court an opportunity to correct its mistake. We find it extraordinary in this case that MEA was, according to the circuit court, entitled to summary judgment, and the only hurdle that stood in MEA's way was the circuit court's misreading of *Friends of Frame Park*, a misreading that was explicitly rendered incorrect by *Blazel*.

¶92 MEA followed this preferred procedure, highlighting for the circuit court that the only justification for its summary judgment order was now, post-*Blazel*, inarguably wrong, and gave the circuit court an opportunity to correct its error. Instead, the circuit court refused to apply *Blazel*, despite the fact that there is no material difference between the requester in *Blazel* and MEA in this case. Both requesters had their lawsuits incorrectly declared moot by a court based on the mid-litigation production of requested records. Defendants ask us to construe WIS. STAT. § 806.07(1)(h) far too narrowly, so narrowly that a "truly deserving claimant[]" is denied relief. *Sukala*, 282 Wis. 2d 46, ¶12. In our view, under the unique circumstances set forth above, "the sanctity of the final judgment is

42

outweighed by the incessant command of the court's conscience that justice be done in light of *all* the facts." *Id.* (cleaned up).

¶93 For the same reasons (i.e., the circuit court's misapplication of *Friends of Frame Park* in light of *Blazel* and as explained in this decision), we also conclude that the circuit court should have granted MEA's motion for reconsideration (assuming that MEA did not meet the standard for relief applicable to WIS. STAT. § 806.07(1)(h)). To succeed on a motion for reconsideration, a movant may present "'a manifest error of law'" committed by the circuit court to support the motion. *Bauer v. Wisconsin Energy Corp.*, 2022 WI 11, ¶13, 400 Wis. 2d 592, 970 N.W.2d 243 (citations omitted). "[A] 'manifest error' must be more than disappointment or umbrage with the ruling; it requires a heightened showing of 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" *Id.*, ¶14 (citation omitted). If it is true, as the circuit court posited, that *Blazel* made no change to the law, then that could only mean that it was true at the time the circuit court decided the parties' cross-motions for summary judgment that, under applicable authority not modified or reversed by the supreme court, "the voluntary disclosure of a requested record [did] not render the action moot because a ruling on the merits will have the practical effect of determining the requester's right to recover damages and fees under WIS. STAT. § 19.37(2)(a) based upon the custodian's denial of its request." *Blazel*, 407 Wis. 2d 472, ¶43 (cleaned up). Again, if that was the state of the law at the time the parties filed cross-motions for summary judgment, then the circuit court did indeed commit "a manifest error of law" in that it misapplied controlling precedent that was not modified by *Friends of Frame Park*.

¶94 Accordingly, whether *Blazel* did or did not effectuate a change in the law, whether by operation of WIS. STAT. § 806.07(1)(h) or via the circuit court's

inherent authority to reconsider its prior rulings, the circuit court should have granted MEA relief and erroneously exercised its discretion by not doing so.

### 2. MEA achieved a judicially sanctioned change in the parties' legal relationship.

¶95     Finally, we turn to the argument that MEA did not achieve a judicially sanctioned change in the parties' legal relationship under *Friends of Frame Park*. We conclude that MEA achieved at least one judicially sanctioned change in the parties' legal relationship. Specifically, we highlight both the circuit court's scheduling order that incorporated the Protocol agreed to by the parties requiring the search for and disclosure of responsive records and the circuit court's order denying Prehn's motion to dismiss.

¶96     Prehn spills much ink arguing that the only "judicially sanctioned change" possible in an action brought under WIS. STAT. § 19.37(1)(a) is the issuance of a writ of mandamus, and because MEA did not obtain a writ, it cannot have "prevailed" in the action such that it is entitled to an award of costs and attorney fees under § 19.37(2)(a). This is not the law. In our view, if the only possible avenue to "prevail" was to obtain a writ of mandamus, then *Friends of Frame Park* would have said so. As we explained in *Blazel*, such a conclusion would render null all actions under the Public Records Law based on unreasonable delays in disclosing public records because these claims can, by definition, only ever be asserted after the records have been released. *Blazel*, 407 Wis. 2d 472, ¶44 n.14. Instead, *Friends of Frame Park* left undefined the phrase "judicially sanctioned change in the parties' legal relationship."

¶97     *Blazel* held that a judicial finding that the original denial or delay violated the Public Records Law was sufficient to create a judicially sanctioned

change in the parties' legal relationship, even if the records were produced mid-litigation. *Id.*, ¶¶3, 79. The circuit court arguably did make this finding in its order granting summary judgment to the Defendants, although it believed it could award no relief. That fact notwithstanding, this case presents two other "judicially sanctioned change[s] in the parties' legal relationship."

¶98 First, we discuss the circuit's court scheduling order that incorporated the terms of the Protocol requiring Prehn to search for and produce responsive records. In April 2022, after the circuit court properly denied Prehn's motion to dismiss, the parties agreed to a Forensic Inspection Protocol that included procedures for identifying responsive documents and a schedule for review and disbursement of responsive records. This agreed upon Protocol, by itself, may not have risen to the level of a *judicially sanctioned* change in the parties' legal relationship. But in this case, the parties submitted that agreement to the circuit court. The circuit court approved the Protocol and incorporated both the Protocol and its review and disbursement schedule into the scheduling order. In other words, the circuit court issued an order that required Prehn to work with a retained forensic expert who would search for and provide responsive records to MEA by September 2, 2022. This is unquestionably a judicially sanctioned change in the parties' legal relationship because the circuit court literally ordered Prehn to cooperate with the search for and production of responsive records.

¶99 We reject the assertion that Prehn *voluntarily* provided responsive records mid-litigation where the circuit court ordered him to search for records and produce them consistent with the agreed upon Protocol. Agreeing to the Protocol might have been voluntary at its inception, but following through and complying with the Protocol became mandatory after the circuit court incorporated it into its scheduling order. The search for and production of these records was the first

item of relief requested in MEA's complaint. We see no other way to interpret an order of the circuit court compelling Prehn to search for and disclose records responsive to the record request at the center of this lawsuit other than a "judicially sanctioned change in the parties' legal relationship."

¶100 Second, we discuss the circuit court's order denying Prehn's motion to dismiss. In our view, this order also constitutes a "judicially sanctioned change in the parties' legal relationship." *Friends of Frame Park*, 403 Wis. 2d 1, ¶3. As we explained above, Prehn was the only party advocating the position that the requested communications were not "records" under the Public Records Law—MEA, the DNR, and the NRB all agreed that the communications were "records" that were required to be produced. The circuit court authoritatively concluded that the requested communications were "records." In our view, the circuit court's order represents an authoritative ruling on the merits of the lawsuit. We construe the circuit court's order as a "judicially sanctioned change in the parties' legal relationship" because it affirmatively ended the dispute about whether the requested communications were or were not "records."

¶101 In sum, regarding MEA's direct appeal, we conclude the following: (1) MEA was not required to directly appeal the circuit court's summary judgment order to obtain relief, and in fact, we reaffirm our preference that litigants should, when possible, move the circuit court for reconsideration or for relief from judgment under WIS. STAT. § 806.07 to give the circuit court the opportunity to correct its errors; (2) the circuit court applied a manifestly incorrect standard of law when it denied MEA's motion; (3) "extraordinary circumstances" exist to justify relieving MEA from the summary judgment, and the circuit court should have granted relief to MEA; and (4) MEA achieved a judicially sanctioned

change in the parties' legal relationship. Accordingly, we reverse the circuit court's order denying MEA's motion for relief from judgment.

**CONCLUSION**

¶102 We conclude that: (1) Prehn's cross-appeal is timely; (2) Prehn is not aggrieved by the circuit court's order granting him summary judgment, so he cannot cross-appeal that order; (3) the circuit court correctly denied Prehn's motion to dismiss because the requested communications are "records," and although Prehn is not an "authority" under the Public Records Law, he is a necessary party to this litigation under WIS. STAT. § 803.03(1); (4) the circuit court erroneously exercised its discretion when it denied MEA's postjudgment motion because it based its decision on a manifest error of law; (5) extraordinary circumstances exist in this case justifying relief from judgment under WIS. STAT. § 806.07(1)(h); and (6) MEA achieved a judicially sanctioned change in the parties' legal relationship.

¶103 Accordingly, as to the cross-appeal, we affirm the circuit court's order denying Prehn's motion to dismiss; regarding MEA's direct appeal, we reverse the circuit court's order denying MEA's motion for relief from judgment or, alternatively, reconsideration, and we remand for further proceedings consistent with this opinion.

¶104 No costs awarded on the cross-appeal.

*By the Court.*—On appeal, final order reversed and cause remanded with directions; on cross-appeal, nonfinal order affirmed.

Recommended for publication in the official reports